(Nos. 73377, 73439 cons.—

*In re* M.M. *et al.*, Minors (Gary T. Morgan *et al.*, Appellees, v. Parents of M.M. *et al.*, Appellants).

*Opinion filed August 26, 1993.*

MILLER, C.J., joined by BILANDIC, J., concurring.

Rita A. Fry, Public Defender, of Chicago (John T. Kennedy and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant parents.

Patrick T. Murphy, Ellen O'Brien, Lee Ann Lowder, Cindy G. Enger and Kathleen G. Kennedy, of the Office of the Public Guardian, of Chicago (Annette Appell, of Meites, Frackman, Mulder & Burger, of Chicago, of counsel), for appellant minors.

Jeffrey W. Finke, of Hartman & Finke, of Chicago, Special Assistant Attorney General, for appellee DCFS guardian administrator.

JUSTICE FREEMAN delivered the opinion of the court:

In these consolidated appeals, we are asked to decide whether the circuit court, when terminating parental rights and appointing a guardian with power to consent to adoption, may condition the guardian's power to consent.

## MOTION TAKEN WITH THE CASE

Preliminarily, we must dispose of appellants' motion to strike portions of appellee Morgan's brief. In their motion, appellants point out that, in his brief, Morgan cites to a decision rendered by the chancery division of the circuit court in Jennifer H. v. McDonald (Cir. Ct. Cook Co.), No. 86—J—4176, as well as pleadings filed in the Federal district court in that case (Jennifer H. v. McDonald (N.D. Ill.), No. 90—C—7219).

In support of their motion to strike, appellants note that Morgan has failed to include in his brief the record of the proceedings and the briefs filed in the chancery and Federal courts in the Jennifer H. case. With respect to the chancery court decision, appellants argue that the

decision is nonbinding, has no precedential value and, therefore, citation to the decision is error and irrelevant to the issue on appeal. Regarding the Federal court pleadings, appellants argue that citation thereto is error because the pleadings were never admitted into evidence in the Jennifer H. case.

Supreme Court Rule 341 governs the form and contents of appellate briefs. (134 Ill. 2d R. 341.) The rule expresses no restriction on the nature or source of material which may be cited in support of an argument. Whether the authority cited may be nonprecedential, irrelevant, or incomplete will be determined by the reviewing court as a proper consideration in assessing the merits of a proponent's argument. An opponent's questions regarding the caliber of the proponent's cited authority, however, provide an insufficient basis to strike portions of the proponent's brief. The proper recourse for the opponent of cited authority is to refute the value of such authority in his reply brief. Appellants' motion to strike portions of Morgan's brief is hereby denied.

## FACTS

These consolidated appeals originated in the circuit court of Cook County. It is important to note here that, pursuant to General Order No. 1.2 of the Circuit Court of Cook County, the juvenile division of the circuit court is designated to hear actions and proceedings arising under the Juvenile Court Act. (Cir. Ct. Cook County, Gen. Order 1.2(VI) (eff. July 1, 1988).) The county division, on the other hand, is designated to hear actions and proceedings arising under the Adoption Act. (Cir. Ct. Cook County, Gen. Order 1.2(IV) (eff. July 1, 1988).) Notwithstanding the various divisions, there is but one circuit court; each division of the court has equal and concurrent subject matter jurisdiction. For purposes of clarity, only, we refer to the division of the court proceeding

pursuant to the Juvenile Court Act as the juvenile court and the division proceeding pursuant to the Adoption Act as the adoption court.

In each of the cases before us, the juvenile court entered an order terminating parental rights and appointing a guardian with power to consent to adoption. See Ill. Rev. Stat. 1989, ch. 37, par. 802—29.

### *In re* M.M.

In July 1989, the Department of Children and Family Services (DCFS), alleging that the parents of M.M. and her siblings were unfit, petitioned the juvenile court for termination of parental rights. Pursuant to a surrender and consent (see Ill. Rev. Stat. 1989, ch. 37, par. 802—29(1)), executed by the parents, the court terminated parental rights with respect to M.M. and three of her siblings.

At a separate hearing on the petition to appoint a guardian with power to consent to adoption, the court found it to be in the best interests of the minor to be adopted by adoptive parents who would be willing to provide contact between the minor and her biological family. Following the hearing, the court entered an order appointing as guardian of the person Gary T. Morgan, DCFS guardianship administrator, with power to consent to adoption, "provided that the adoptive parents agree to continue to permit contact by the minor with her biological family." The case was continued for completion of adoption.

In October 1989, M.M.'s foster parents petitioned the adoption court to adopt M.M. Although the foster parents had facilitated contact between M.M. and her biological parents and siblings in the past and agreed to continue to do so on an informal basis, they declined agreement to a court order to effect continued contact.

The guardian *ad litem*, on behalf of M.M.'s parents, moved the adoption court to enforce the conditional order of the juvenile court or dismiss the petition to adopt. M.M.'s foster parents filed an affidavit in which they stated their agreement that M.M.'s continued visitation with her biological family would be in the child's best interests and that they would continue to permit such visitation as long as it remained so. However, the foster parents expressed concerns with respect to the validity of an adoption judgment entered pursuant to a guardian's conditional consent, the unavailability of financial resources to pay for legal expenses which might arise in the event of an attack on the validity of the adoption, and disputes concerning the desirability, frequency, place or manner of visits.

In April 1990, Morgan moved the juvenile court to modify its order to eliminate the conditional language, arguing, *inter alia*, that the order was void as in excess of the court's authority. The juvenile court denied the motion, and Morgan appealed the court's denial to the appellate court.

### *In re* M.E.B. *et al.*

The M.E.B. case presents similar circumstances. The four children in this case were determined to have been abused and were placed in foster homes. In March 1990, the juvenile court determined the biological parents of these children to be unfit, and terminated parental rights.

The court found it to be in the best interests of the children to continue contact with their biological siblings. Morgan was appointed guardian with power to consent to adoption. Over the objection of DCFS, the court conditioned Morgan's consent on the prospective adoptive parents' agreement to permit continued contact between the siblings. Morgan objected to the conditional order

and moved the court for modification. The motion was denied and the case was continued for completion of adoption.

As in the case of M.M., the prospective adoptive parents, who had provided foster care for the children for several years, agreed to facilitate continued contact between the biological siblings, but did not wish to have the requirement mandated by court order.

## *In re* A.B.

A.B. was removed from her mother's custody in 1986. In 1989, the State petitioned the juvenile court to terminate parental rights and to appoint a guardian with power to consent to adoption.

In May 1990, the guardian *ad litem* for A.B. petitioned the juvenile court to consider whether, in the event that parental rights were terminated, the court would condition the power of the guardian to consent to adoption upon the prospective adoptive parents' agreement to allow A.B. to have continued contact with her siblings. Although the prospective adoptive parents agreed to accept court-ordered visitation, the juvenile court declined, for lack of authority, to condition the guardian's power to consent. The case was continued for completion of adoption.

The office of the public guardian appealed the court's refusal to enter the conditional provision.

The three cases were consolidated for purposes of appeal in the appellate court. With respect to A.B., the appellate court affirmed the juvenile court order. In the M.M. and M.E.B. *et al.* cases, however, the court reversed the conditional orders and remanded the causes to the juvenile court for a determination of whether nonprovisional orders are in the best interests of the children. 226 Ill. App. 3d 203.

Separate petitions for leave to appeal were filed in this court by the Cook County public defender, on behalf of the parents of M.M. and M.E.B. *et al.*, and by the office of the public guardian, on behalf of all of the minors. We allowed both petitions (134 Ill. 2d R. 315), and, on this court's own motion, consolidated the cases.

Separate appellants' briefs were filed by the public guardian, on behalf of all of the minor children, and by the public defender, on behalf of the biological parents of M.M. and M.E.B. *et al.* "Appellants," as used in this opinion, refers, interchangeably, to the minor children or to their parents.

## DISCUSSION

Section 2—29(2) of the Juvenile Court Act of 1987, the statutory provision at issue in this case, provides, in pertinent part:

> "(2) If the petition prays and the court finds that it is in the best interest of the minor that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court with the consent of the parents, if living, or after finding, based upon clear and convincing evidence, that a non-consenting parent is an unfit person as defined in Section 1 of [the Adoption Act], may empower the guardian of the person of the minor, in the order appointing him or her as such guardian, to appear in court where any proceedings for the adoption of the minor may at any time be pending and to consent to the adoption *** without further notice to, or consent by, the parents of the minor." (Ill. Rev. Stat. 1989, ch. 37, par. 802—29(2).)

This provision of the Juvenile Court Act defines the process by which the juvenile court terminates parental rights and frees minors for adoption.

The Juvenile Court Act (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*) mentions the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501 *et seq.*) only in the context

of termination proceedings. (See Ill. Rev. Stat. 1989, ch. 37, pars. 802—29, 803—30, 804—27, 805—31.) The Juvenile Court Act, however, makes no provision with respect to adoption placement determinations. Because the juvenile court's conditional orders directly impact on adoption determinations, we consider the Juvenile Court Act in concert with the Adoption Act. See Ill. Rev. Stat. 1989, ch. 40, par. 1503 (Adoption Act shall be construed in concert with Juvenile Court Act).

We begin with a general discussion concerning proceedings to terminate parental rights and the legal effect of an adoption judgment. In Illinois, a proceeding to involuntarily terminate parental rights may be brought under the Juvenile Court Act (Ill. Rev. Stat. 1989, ch. 37, pars. 802—29, 803—30, 804—27, 805—31) or the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501 *et seq.*). Where a child has been previously adjudged abused, neglected or dependent, the petition for termination of parental rights is filed under the Juvenile Court Act. (See Ill. Rev. Stat. 1989, ch. 37, par. 802—29(2).) Generally, all other involuntary termination actions proceed under the Adoption Act. (See Geraghty, *Ending Family Ties: Termination of Parental Rights in Illinois*, 79 Ill. B.J. 572 (1991).) Although termination proceedings may occur in the juvenile court, it is the adoption court which hears and determines adoption petitions. The Juvenile Court Act makes no provision for adoption proceedings.

Regardless of under which Act the termination action is brought, the goals of the proceedings are identical: (1) to determine whether the natural parents are unfit, and if so (2) to determine whether adoption will best serve the child's needs. (79 Ill. B.J. at 574.) Under the Juvenile Court Act, the order empowering the guardian to consent to adoption terminates parental rights. (Ill. Rev. Stat. 1991, ch. 37, par. 802—29(2).) The Adoption Act contains no parallel provision for the appointment and

empowerment of a guardian when parental rights are terminated pursuant to an adoption petition.

Adoption is the legal and social process by which a nonbiological parent-child relationship is created. An adoption proceeding, like proceedings under the Juvenile Court Act, is a creature of statutory enactment, nonexistent at common law. *Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 436-37; *Musselman v. Paragnik* (1925), 317 Ill. 597, 599; 2 C.J.S. *Adoption of Persons* §3 (1972); see also *In re Fucini* (1970), 44 Ill. 2d 305, 310; *Lindsay v. Lindsay* (1913), 257 Ill. 328, 335 (juvenile court proceedings are statutory).

After an adoption judgment is entered, the biological parents of the child are relieved of all parental responsibilities for the child. (*People ex rel. Bachleda v. Dean* (1971), 48 Ill. 2d 16, 19; see also *In re Adoption of Syck* (1990), 138 Ill. 2d 255, 274-75.) With the exception of the biological parents' residual duty to support their children (*Dwyer v. Dwyer* (1937), 366 Ill. 630, 633-34), and the children's right to inherit from and through their biological parents (*In re Estate of Tilliski* (1945), 390 Ill. 273), adoption constitutes a complete and permanent severance of all legal and natural rights between such parents and children (*In re Abdullah* (1981), 85 Ill. 2d 300, 306; *Bachleda*, 48 Ill. 2d at 19). Included in the biological parents' severed bundle of rights is the right to visitation, which is a form of custody. See *In re Adoption of Schumacher* (1983), 120 Ill. App. 3d 50, 52, citing *In re Custody of Myer* (1981), 100 Ill. App. 3d 27.

The rights of the child in relation to the parent are, likewise, permanently severed. (See 2 C.J.S. *Adoption of Persons* §100 (1972).) Once adopted, a child attains the status of a natural child of the adoptive parents, and the adoptive parents are vested with care, custody and control of that child.

## ANALYSIS

The narrow issue presented for our resolution is whether the juvenile court, pursuant to the Juvenile Court Act, may condition the court-appointed guardian's power to consent to adoption. We answer the inquiry in the negative.

At the outset, we acknowledge, as appellants contend, that the circuit courts of this State have an inherent plenary power to appoint guardians of minors independent of any authority given to the courts by the legislature. (*People ex rel. Ryan v. Sempek* (1958), 12 Ill. 2d 581, 584; *In re Estate of Suggs* (1986), 149 Ill. App. 3d 793.) "The source of this jurisdiction is quite uncertain. Whether the power was originally a mere usurpation, or was legally delegated to the chancellor by the crown as *parens patriae*, or grew out of the practice of appointing guardians *ad litem*, the jurisdiction exists here by inheritance from the English courts of chancery and not because equitable rights or titles are involved." *Thomas v. Thomas* (1911), 250 Ill. 354, 364-65; see also *People ex rel. Houghland v. Leonard* (1953), 415 Ill. 135; *In re Guardianship of Smythe* (1965), 65 Ill. App. 2d 431.

Appellants assert that, viewed properly as a "guardianship case," it is apparent that the juvenile court here had inherent authority to condition the guardian's consent. However, as we have stated, adoption was not known to common law; the concept is statutorily derived. It follows, then, that because adoption did not exist at common law, the authority to empower a guardian to consent to adoption, likewise, did not exist. Although the court's authority to appoint a guardian is independent of any statute, the authority to empower that guardian to consent to adoption transcends the court's traditional common law authority. Such authority derives

exclusively from statute. (See Ill. Rev. Stat. 1989, ch. 37, par. 802—29.) Thus, characterization of this case as a "guardianship case" yields no resolution of the issue; more is required.

Appellants next seek to support the propriety of the juvenile court's conditional orders on the basis of our circuit courts' "original jurisdiction over all justiciable matters." Appellants reason that the circuit courts are courts of general jurisdiction and can employ their equitable powers to enforce the best interests of the child mandate of the Adoption Act. Citing *McGinnis Plumbing Co. v. Zeus Development Corp.* (1983), 119 Ill. App. 3d 1096, appellants contend that, although in the past a trial court's jurisdiction over special statutory proceedings not recognized at common law was derived from legislatively granted authority, the "Judicial Article of 1962 and the Illinois Constitution of 1970 changed all of that. The circuit court now derives its jurisdiction directly from the Constitution and not from any statute or pleading." (*McGinnis Plumbing*, 119 Ill. App. 3d at 1100.) Thus, appellants contend, the absence of express statutory authority does not invalidate the court's conditional order.

Appellants apparently refer to the court's subject matter jurisdiction. Subject matter jurisdiction refers to the power of the court to adjudge concerning the general question involved (see *Faris v. Faris* (1966), 35 Ill. 2d 305, 309), as well as the power to grant the particular relief requested (*People ex rel. Rice v. Appellate Court* (1971), 48 Ill. 2d 195, 197; *People ex rel. Department of Human Rights v. Arlington Park Race Track* (1984), 122 Ill. App. 3d 517, 521; *J.L. Simmons Co. v. Capital Development Board* (1981), 98 Ill. App. 3d 445, 446). Every act of the court beyond that power is void. (*Rice*, 48 Ill. 2d at 197.) Without question, the juvenile court here had subject matter jurisdiction to proceed on the

petition to terminate parental rights and to appoint a guardian with power to consent to adoption.

Incidentally, in *Ardt v. Illinois Department of Professional Regulation* (1992), 154 Ill. 2d 138, 145, this court stated, generally, that jurisdiction of the subject matter of a case is conferred on courts either by statute or by the constitution. This statement appears to conflict with appellants' assertion that jurisdiction flows solely from the constitution. In the interest of clarity, we now qualify the statement in *Ardt*. With the exception of administrative review actions, where jurisdiction is conferred upon the circuit court by the legislature, jurisdiction is conferred by our constitution. See Ill. Const. 1970, art. VI, §9; see also *In re Estate of Spaits* (1984), 104 Ill. 2d 431; *People v. Gilmore* (1976), 63 Ill. 2d 23; *People v. Valdez* (1980), 79 Ill. 2d 74.

Reasoning that the court's jurisdiction over this matter is constitutionally derived, appellants suggest to us that the court may, therefore, proceed in derogation of the statute. The practical effect of appellants' reasoning would render any statutory law a nullity. We, therefore, reject their reasoning as unsound.

*Skilling v. Skilling* (1982), 104 Ill. App. 3d 213, cited approvingly by this court in *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 165-66, is instructive on the matter. Where the legislature enacts a comprehensive statutory scheme, creating rights and duties which have no counterpart in common law or equity, the legislature has created a "justiciable matter." (*Skilling*, 104 Ill. App. 3d at 219.) Once the right is created, it is by reason of our constitution that our circuit courts acquire power to adjudge concerning that right. (*Skilling*, 104 Ill. App. 3d at 219.) However, it is by reason of the statute that the justiciable matter exists.

The legislature may define the "justiciable matter" in such a way as to preclude or limit the authority of the circuit court. (*Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 165-66 (citing *DeKing v. Urban Investment & Development Co.* (1987), 155 Ill. App. 3d 594, 596-97, and *Skilling*, 104 Ill. App. 3d at 219).) When a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction (*DeKing*, 155 Ill. App. 3d at 596, citing *Brown v. VanKeuren* (1930), 340 Ill. 118, 122), and courts exercising jurisdiction over such matters must proceed within the strictures of the statute (see *Fredman Brothers Furniture*, 109 Ill. 2d at 210).

Juvenile court proceedings qualify as special statutory proceedings. (*People v. Piccolo* (1916), 275 Ill. 453, 455; see also *In re Dependency of Rosmis* (1960), 26 Ill. App. 2d 226, 230.) Section 2—29 of the Juvenile Court Act, which pertains to the termination of parental rights and the empowerment of a guardian to consent to adoption, is part of a comprehensive statutory scheme designed to facilitate the creation of a parent-child relationship between strangers, pursuant to the Adoption Act. The scope and application of the Juvenile Court Act are defined solely by the legislature. (*People v. P.H.* (1992), 145 Ill. 2d 209, 223.) In particular, the juvenile court's authority to empower a guardian to consent to adoption was created by the legislature, and the court's authority with respect to that empowerment is defined by the language of the Juvenile Court Act. The Juvenile Court Act makes no provision for the circuit court to limit, restrict or, in any way, condition that guardian's power. For these reasons, we hold that the juvenile court exceeded its statutory authority. See *In re Sneed* (1977), 48 Ill. App. 3d 364, 369 (holding that in a special statutory pro-

ceeding, the court could exercise no power not specially given in the Juvenile Court Act).

We perceive no inconsistency between our interpretation of the Juvenile Court Act and the statutory mandate therein to liberally construe the Act. (Ill. Rev. Stat. 1989, ch. 37, par. 801—2(4).) We have never understood liberal construction as conferring authority to engage in judicial legislation. Nor do we find our position at odds with the best interests of the child directive expressed in the Juvenile Court Act. Obviously, best interests considerations under the Juvenile Court Act and the Adoption Act are not mutually exclusive. However, the juvenile court's best interests considerations, in the context of a termination proceeding, are limited to a determination of whether it is in the child's best interests to be freed for adoption. By contrast, best interests considerations in the context of an adoption proceeding concern the appropriateness of a particular adoption placement. Such considerations are properly within the province of the adoption court.

Appellants further argue that, although no express provision exists in the Juvenile Court Act for the conditional orders, the juvenile court may, nonetheless, avail itself of procedures not specifically authorized by the statute. They invite our attention to *In re Adoption of Scraggs* (1988), 125 Ill. 2d 382, as instructive.

In *Scraggs*, the circuit court, in an adoption proceeding, enjoined the biological father's visitation with his son until a determination of the father's fitness could be made. The Adoption Act makes no provision for injunctive relief. The adoption court determined that the injunction was necessary because the child had expressed fear that his father might take him away from his adoptive family. Further, the court found that due to the child's age and the length of separation from his father, irreparable harm would be caused to the child if visita-

tion were allowed. In affirming the trial court, this court held that the injunction was "germane to the distinct purpose of the Adoption Act." *Scraggs*, 125 Ill. 2d at 387.

Although not expressly stated therein, the holding in *Scraggs* can be supported on yet another basis. As early as *Cowles v. Cowles* (1846), 8 Ill. 435, 437, this court upheld a custody decree, not on the basis of jurisdiction conferred by the Divorce Act, but under the "power of the court of Chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction." The legislature conferred no new authority or jurisdiction upon the court; "[i]t was by its original jurisdiction clothed with the same powers before." *Cowles*, 8 Ill. at 438; see also *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 291; *In re Petition of Ferrier* (1882), 103 Ill. 367.

Clearly, the adoption court in *Scraggs* could, in the exercise of its inherent equitable power, enjoin the father's visitation. The court's power to do so existed at common law, prior to and independent of the Adoption Act. Thus, no statutory authority was required. However, *Scraggs* offers no support for the exercise of authority which qualifies as neither equitable nor statutory. In the case now before us, the juvenile court had neither equitable nor statutory authority to condition the guardian's power to consent to adoption.

Prior to leaving this portion of the discussion we note appellants' assertion that adoption is not solely based upon statute. They maintain, citing *Dixon National Bank v. Neal* (1955), 5 Ill. 2d 328, that there is "long standing common law recognizing non-statutory, contractual adoption in this state."

*Dixon* offers no support for this assertion. *Dixon* was a contract case in which the adopted son of a decedent sought specific performance of a contract to adopt. Sig-

nificantly, in *Dixon*, an adoption petition had been filed and an order of adoption had been entered by a Wisconsin court. Though the adoption was pursuant to a contract, there is nothing in *Dixon* to suggest the nonexistence of statutory authority creating the right to adopt. See 2 C.J.S. *Adoption of Persons* §§3, 25 (1972).

Our holding with respect to the court's conditional orders may be additionally sustained by application of the rules of statutory construction. It is axiomatic that where the language of a statute is plain and unambiguous, the only role of the court is in its application. We have no authority either to amend or to annex a statute. (See *Cunningham v. Huffman* (1993), 154 Ill. 2d 398, 403-04.) Any alteration to the statute, regardless of any perceived benefit or danger, must necessarily be sought from the legislature.

The language of the Juvenile Court Act is clear and unambiguous. It provides only that the court shall empower the guardian to consent to adoption. In the absence of a legislative grant, we are powerless to construe the Act as permitting the juvenile court to condition, or otherwise infringe, that authority. Moreover, a contrary reading of the Act creates the potential for the juvenile court, proceeding in the name of the best interests of the child mandate, to impose any number and character of conditions on the guardian's power to consent.

Beyond our determination of the court's statutory authority and application of the rules of statutory construction, we have considered also the practical effect of the juvenile court's conditional orders. The Adoption Act provides several express factors which the guardian empowered to consent, and, ultimately, the adoption court, must consider in making an adoption determination. (See Ill. Rev. Stat. 1989, ch. 40, par. 1519.1(b).) Preserving family ties between the child and the child's relatives

and siblings is one of the several factors. (Ill. Rev. Stat. 1989, ch. 40, par. 1519.1(b)(7).) No single factor is assigned greater value than any other; the guardian and the court are to consider all relevant factors in making an adoption determination. (See Ill. Rev. Stat. 1989, ch. 40, par. 1519.1(c).) The ultimate factor in the adoption determination is, however, the best interests of the child.

By its conditional order, the juvenile court has elevated the "preservation of family ties" factor above all others and has, in effect, defeated the statutory mandate that the adoption court consider all relevant factors. It is conceivable that an adoptive child's need for stability and continuity of relationship with parent figures, another of the statutory factors (Ill. Rev. Stat. 1989, ch. 40, par. 1519.1(b)(3)), might outweigh or conflict with the child's need to preserve ties with his biological family. The adoption court must be free and unfettered in its deliberations to weigh these factors and to resolve any conflict. The juvenile court's conditional order renders irrelevant other factors and undercuts the statutory authority conferred on the adoption court.

Appellants next argue that the court which appoints a guardian must be able to control the actions of the guardian. They maintain that if the juvenile court has the power to authorize the guardian to consent to adoption, then it follows that the juvenile court must also have discretion to determine under what circumstances such consent is appropriate. Appellants conclude that a limitation on the court's authority with respect to the guardian's authority "ties the trial court's hands in providing for its ward's best interest."

We disagree with appellants' argument. As we have previously stated, section 2—29 of the Juvenile Court Act, which authorizes the appointment of a guardian with power to consent to adoption, is part of a compre-

hensive statutory scheme. This scheme provides a procedure for the orderly disposition of adoption petitions where the termination of parental rights has occurred in a proceeding other than in the adoption proceeding. Where the child has been adjudicated abused, neglected, or dependent, the division of the circuit court, sitting as a juvenile court, is vested with authority to terminate parental rights, thereby freeing the child for adoption, and to appoint and empower a guardian to appear in the subsequent adoption proceeding. Empowerment of the court-appointed guardian signals the end of juvenile court's role in the adoption process.

The adoption court, another division of the circuit court, hears the adoption proceeding and, after considering all of the relevant factors, determines whether the guardian's consent has been improperly granted or withheld. It is for the adoption court, which ultimately determines the appropriateness of a prospective adoption placement, to "control" the guardian with respect to consent. (See, *e.g., Bland v. Department of Children & Family Services* (1986), 141 Ill. App. 3d 818; *Stines v. Vaughn* (1974), 23 Ill. App. 3d 511.) Nevertheless, the circuit court, sitting in the adoption (county) division, exercises "control" over the guardian. In that regard, we note that our appellate court has held that the guardian's consent does not act as a condition precedent to a circuit court's authority to determine an adoption petition. (See, *e.g., Bland,* 141 Ill. App. 3d 818; *Stines,* 23 Ill. App. 3d 511; *In re Adoption of Savory* (1981), 102 Ill. App. 3d 276; see also Ill. Rev. Stat. 1989, ch. 40, par. 1519.1(d).) Further, we note the juvenile court's conditional orders disrupt the statutory scheme for the orderly disposition of adoption petitions.

Appellants next contend that policy considerations support the propriety of the court's conditional order.

We note also at this juncture that appellants have cited us to several cases from our sister jurisdictions which appellants assert are supportive of their position.

The arrangement which would result from the court's conditional order is what is commonly characterized by social welfare agents as an "open adoption." (Amadio & Deutsch, *Open Adoption: Allowing Adopted Children to "Stay in Touch" With Blood Relatives*, 22 J. Fam. L. 59, 60 (1983-84) (open adoption occurs when prior to the adoption there is an agreement that the child will have continuing contact with members of his or her biological family after the adoption is completed).) We are keenly aware of the intensified debate over the benefits of such an arrangement. (See Note, *Visitation After Adoption: In the Best Interests of the Child*, 59 N.Y.U.L. Rev. 633 (1984); Note, *Open Adoption: Can Visitation With the Natural Family Members Be in the Child's Best Interest?* 30 J. Fam. L. 471 (1991-92).) Indeed, contemporary writers on the subject have expressed that "open adoption" coincides with the best interests standard. (See Clark, *Children & the Constitution*, 1992 U. of Ill. L. Rev. 1, 24.) However, the issue before us, though steeped in policy considerations, turns solely on an interpretation and application of *our* Juvenile Court Act. We are constrained by its terms. For that reason also, consideration of cases from foreign jurisdictions would not alter the result we reach here.

Finally, appellants contend, citing *Aristotle P. v. Johnson* (N.D. Ill. 1989), 721 F. Supp. 1002, that birth-family relationships, including those between siblings, are protected by the United States Constitution. They argue that the State has an obligation to preserve children's relationships with their families, particularly in cases, as here, where the potential adoptive parents have expressed a willingness to permit that contact.

Appellants take the position that the court's conditional orders protect those familial relationships.

Appellants' argument is unavailing. *Aristotle P.* does not address the protection of familial ties in the context of adoption. Further, as we have stated, adoption results in a complete severance of the parent-child relationship. Appellants cite to no authority to support the conclusion that biological family ties continue to receive protected status in the face of an adoption.

## CONCLUSION

Adoption relationships are entered into only after what should amount to intensive thought and consideration. Once an adoptive placement is determined to be in the best interests of the child, duties and responsibilities with respect to the care, custody and control of that child vest, solely, in the adoptive parents. It then becomes the right of the adoptive parents to decide whether to permit or deny continued contact with the child's biological family. Obviously, where an adoptive child is of an age where he or she has knowledge of and has formed a relationship with her biological family, no statutory provision can sever the existing bond. We perceive that the legislature has attempted to accommodate this bond by mandating the adoption court's consideration of the child's need to preserve biological family ties in the adoption placement determination. With the exception of directing consideration of the family ties factor, however, the Adoption Act evidences no clear intent that the General Assembly intended to legislate with respect to "open adoption." Under our current statutory scheme, once the adoption court determines the appropriateness of an adoption placement, implicit in that determination is that the adoptive parents will provide, in every regard, for the best interests of the adopted child.

For all of the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*

CHIEF JUSTICE MILLER, concurring:

I concur in the court's judgment, and in its determination that a circuit judge is not authorized to impose special conditions on a court-appointed guardian's power to consent to the adoption of a minor.

I agree also with the majority's reaffirmation of *In re Estate of Spaits* (1984), 104 Ill. 2d 431, *People v. Valdez* (1980), 79 Ill. 2d 74, and *People v. Gilmore* (1976), 63 Ill. 2d 23. A more recent decision, *Ardt v. Illinois Department of Professional Regulation* (1992), 154 Ill. 2d 138, 145, states that the jurisdiction of the circuit courts may be derived either from the constitution or from statutes. That declaration is overbroad. As the majority correctly observes, circuit court jurisdiction is conferred solely by the constitution, except in the limited area of administrative review. The majority rightly rejects *Ardt*'s suggestion to the contrary.

In light of the majority's explicit disavowal of that statement in *Ardt*, I do not construe the majority's later reference to "the rules of limited jurisdiction" (156 Ill. 2d at 66) or the ensuing discussion of that notion as signifying a different understanding of circuit court jurisdiction. The sources and scope of that jurisdiction changed dramatically with the 1964 amendments to the judicial article of the former constitution, and the terminology employed in earlier decisions must be viewed in the constitutional context in which those cases were decided. Thus, *Brown v. VanKeuren* (1930), 340 Ill. 118, 122, and its discussion of special statutory jurisdiction and limited jurisdiction, cited in the majority opinion, is of no assistance here, for it was decided under the law in effect prior to the judicial article amendments of 1964.

Under the current constitution, the legislature confers jurisdiction on the circuit courts only in the area of administrative review, as illustrated by cases such as *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, and *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, also cited by the majority. See Fins, *Re-examination of "Jurisdiction" in Light of New Illinois Judicial Article*, 53 Ill. B.J. 8 (1964).

Because the circuit courts now are courts of general jurisdiction and, except in the review of administrative action, derive their jurisdiction from the constitution, not from the legislature, we should not attempt to breathe new life into terms that can have no application here. "[T]he bench and bar are by nature traditionalists and *** with them old notions die hard. No longer do we seek statutory justification for the exercise of jurisdiction; rather the inquiry must be whether there exists a justiciable controversy, and if so, are there any statutory conditions precedent to judicial intervention." *In re Estate of Mears* (1982), 110 Ill. App. 3d 1133, 1138.

That a circuit court's jurisdiction over a certain matter is conferred by the constitution rather than by the legislature does not mean, however, that a court is free to act in ways inconsistent with controlling statutory law, as the appellants would have it. Clearly, the constitutional source of a circuit court's jurisdiction does not carry with it a license to disregard the language of a statute. As the majority explains, the statutory provisions applicable here do not support the special conditions imposed below. I concur in that reasoning, and I join the court's judgment.

JUSTICE BILANDIC joins in this concurrence.