*In re* VANESSA C. *et al.*, Minors, Respondents-Appellees (The People of the State of Illinois, Plaintiff-Appellee, v. Priscilla E., Respondent-Appellant).

First District (1st Division)    No. 1—98—3305

Opinion filed August 28, 2000.

476

James K. Leven, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Jennifer Streeter, Assistant State's Attorney, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Respondent, Priscilla E., appeals from the July 17, 1998, order finding her to be an unfit parent and terminating her parental rights with respect to two of her children, Vanessa C. and Priscilla C. This court has jurisdiction pursuant to Supreme Court Rule 303. 155 Ill. 2d R. 303.

The minor children, Vanessa C. and Priscilla C., were found to be neglected and abused on September 23, 1994, and adjudicated wards of the court on October 18, 1994. On February 7, 1997, the State filed a petition to terminate respondent's parental rights alleging she failed to maintain reasonable interest, concern or responsibility for the girls' welfare; failed to protect them from injurious conditions; failed to make reasonable progress toward their return to her since the finding of abuse and neglect was entered; and was unable to discharge her duties as a parent because of mental impairment, mental illness or mental retardation.[1] 750 ILCS 50/1(D)(b), (D)(g), (D)(m), (D)(p) (West 1996).

The State first served written interrogatories on respondent's attorney on August 12, 1997. On September 17, 1997, the State served courtesy copies of those same interrogatories upon respondent's recently substituted counsel. On October 24, 1997, the trial court entered an order directing the respondent to answer the State's interrogatories within 21 days therefrom.

On December 2, 1997, based on respondent's failure to comply with the court's order and file answers to its interrogatories, the State filed a motion pursuant to Supreme Court Rule 219 asking the court to strike respondent's response to the supplemental petition, bar re-

---

[1]The children's father, Wayne C., voluntarily consented to the adoption of the two girls by his mother, Lorraine Harry, with whom the girls have lived since being taken from their parents' home.

spondent from presenting a defense and enter default judgment against respondent. 166 Ill. 2d R. 219.

Shortly thereafter, respondent's attorney filed a motion to withdraw as attorney of record. At a hearing on January 14, 1998, counsel for respondent explained she sought to withdraw primarily because respondent refused to sign the answers to the State's interrogatories. The trial court asked respondent to state her reasons for refusing to sign the answers to interrogatories. Respondent stated: "My girls been gone away from me too long and they steady wanting me to sign these papers and they not meeting me halfway, they not giving me unsupervised visits with my girl [sic]. That is all I am continuing to do is sign papers after all these years. My girls been gone since '93. I can't take them nowhere but they still want me to sign papers and stuff. I told her [respondent's attorney] the same thing. I refuse to sign the papers." The trial court admonished respondent about the possible serious repercussions of her failure to sign the document including the entry of orders adversely affecting the outcome of the trial. The judge explained that "by not signing these interrogatories it does not mean that you are voluntarily giving up your children, it means that you are fighting for your children." Nevertheless, respondent continued in her refusal to sign. Counsel's motion to withdraw was denied and the court then moved forward to a hearing on the State's Rule 219 motion.

In support of its motion, the State argued the answers were necessary so as to avoid surprise at trial about respondent's compliance with the service plan; the questions were not burdensome in that they asked where and when respondent may have completed services other than those offered or referred by DCFS. The respondent's attorney countered that all other discovery had been complied with and the subject interrogatories were merely a reiteration of information already in the State's possession and therefore unnecessary and duplicative. She argued further that denying the respondent the right to put forth a defense was a drastic remedy where the termination of parental rights was at issue.

The trial court found respondent's refusal to sign the interrogatories was wilful and as a sanction struck respondent's answer to the supplemental petition and barred her from presenting any evidence in her defense at trial. Respondent was limited to cross-examining the State's witnesses and reviewing the State's discovery and exhibits.

## I

Respondent first contends the trial court was without subject matter jurisdiction to enter the order barring respondent from presenting

a defense as the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1998)) does not specifically provide for such a sanction and thus the order was void *ab initio*.

Acts of the court that exceed the bounds of its subject matter jurisdiction are void. *In re M.M.*, 156 Ill. 2d 53, 64 (1993). Subject matter jurisdiction refers to the court's authority to entertain the question presented by the case as well as its power to grant the particular relief requested. *In re M.M.*, 156 Ill. 2d at 64; *In re R.V.*, 288 Ill. App. 3d 860 (1997).

■ Juvenile court proceedings qualify as special statutory proceedings. *In re M.M.*, 156 Ill. 2d at 66. The scope and application of the Juvenile Court Act are defined solely by the legislature; there is no counterpart at common law or equity. *In re M.M.*, 156 Ill. 2d at 66; *People v. P.H.*, 145 Ill. 2d 209, 223 (1991). Where a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction. *In re M.M.*, 156 Ill. 2d at 66. Therefore, it is axiomatic that courts exercising jurisdiction over the Juvenile Court Act must proceed within the strictures of the statute. *In re M.M.*, 156 Ill. 2d at 66.

■ However, the juvenile courts in the circuit court of Cook County are also bound by the circuit court rules. Our legislature has granted to the circuit courts the power to make rules of pleading, practice and procedure to aid in the orderly administration of justice. 735 ILCS 5/1—104(b) (West 1998).[2] Pursuant to this grant of authority, the circuit court of Cook County has promulgated rule 19A.12, which relates specifically to the discovery process and applicability of supreme court rules in termination of parental rights cases. In relevant part, the rule states:

"(B) Limited Discovery Subsequent to the First Court Appearance

Discovery limited to written requests for information, documents, records, or evidence available for inspection, testing, copying or photographing may be undertaken between the parties without the leave of court. Any party receiving such a written request shall, within ten days, excluding weekends and court holidays, comply with the request or provide a written explanation of the reasons for non-compliance to the parties and the court.

(C) Judicial Management of Discovery

All provisions for discovery set out in the Supreme Court Rules are enforceable in the Juvenile Division for good cause shown at

---

[2]"Subject to the rules of the Supreme Court, the circuit and Appellate Courts may make rules regulating their dockets, calendars, and business." 735 ILCS 5/1—104(b) (West 1998).

the discretion of the court." Cook Co. Cir. Ct. R. 19A.12 (eff. January 4, 1993). Clearly, the circuit court intended for the trial courts exercising authority over the Juvenile Court Act to employ the supreme court discovery rules to aid in the fair and orderly processing of termination cases. Pursuant to this broad mandate then, the court was, in fact, vested with the power to entertain the State's motion for sanctions pursuant to Supreme Court Rule 219 and, in its best discretion, avail itself of any of the remedies contained therein. Therefore, we hold the order sanctioning respondent is not void for lack of subject matter jurisdiction.[3] See also *In re R.V.*, 288 Ill. App. 3d 860, 868 (1997) (whether a party is entitled to discovery under the supreme court rules in juvenile court proceedings is subject to the discretion of the trial court); *In re F.B.*, 206 Ill. App. 3d 140, 153 (1990).

## II

Respondent next posits that the order barring her from presenting a defense at trial abridged the rights afforded her under the Juvenile Court Act[4] (705 ILCS 405/1—5 (West 1998)) and offended her constitutional right to due process. We agree.

■ The nature of the process due in parental rights termination proceedings turns on a balancing of the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976). See also *In re C.J.*, 272 Ill. App. 3d 461, 465 (1995); *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981). According to *Mathews*, the factors to be considered are: (1) the private interest that will be affected by the official actions; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of ad-

---

[3]Respondent additionally argues the trial court abused its discretion in granting the State's motion for sanctions as the State failed to first get leave of court to serve respondent with the subject interrogatories. This argument is clearly in contradiction to the plain meaning of circuit court rule 19A.12, which provides that the parties may conduct limited discovery without leave of court.

[4]In relevant part the Juvenile Court Act provides:
"§ 1—5. Rights of parties to proceedings. (1) *** [T]he minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel." 705 ILCS 405/1—5(1) (West 1998).

ditional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

In parental rights termination proceedings, the private interest affected is commanding; the risk of error resulting from barring a parent from testifying manifest; and the governmental interest is coextensive with that of the natural parent up to a determination of unfitness. Consequently, we conclude that barring a party in interest from presenting a defense or testifying in such proceedings does not comport with due process.

## A

■ It is well established that a parent's interest in maintaining a parental relationship with her child is a fundamental liberty interest protected by the due process clause of the fourteenth amendment. *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982)[5]; U.S. Const., amend. XIV. Indeed, the Supreme Court recognized that a parent's desire for and right to the companionship, care, custody and management of his or her children is an interest far more precious than any property right. *Santosky*, 455 U.S. at 758-59, 71 L. Ed. 2d at 610, 102 S. Ct. at 1397. Thus, "[w]hen the state initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it. *** Few forms of state action are both so severe and so irreversible." *Santosky*, 455 U.S. at 759, 71 L. Ed. 2d at 610, 102 S. Ct. at 1397-98. See also *In re D.R.*, 307 Ill. App. 3d 478, 482 (1999).

In recognition of the significant interest in jeopardy in termination of parental rights cases, the Supreme Court held that state intervention to terminate the relationship between a parent and a child must be accomplished by procedures meeting the requisites of the due process clause. *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981). "If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs." *Santosky*, 455 U.S. at 753, 71 L. Ed. 2d at 606, 102 S. Ct. at 1395. Thus, the first *Mathews* factor weighs heavily against the trial court's restriction of a parent's

---

[5]*Santosky* held the private interest affected by a termination proceeding was sufficiently compelling as to warrant a "clear and convincing" standard of proof to adequately distribute the risk of error between the litigants, *i.e.*, the state and the parents.

meaningful participation in the proceeding undertaken to terminate his or her parental rights.

## B

We must next consider both the risk of erroneous deprivation of private interests resulting from barring a parent from presenting evidence at a termination proceeding and the likelihood that the utilization of other procedures would reduce that risk.

■ Although the Juvenile Court Act specifically states the proceedings are not intended to be adversarial in nature (705 ILCS 405/1— 5(1) (West 1998)), in actuality proceedings to terminate parental rights are contests that pit the state squarely against the parents and, as the Supreme Court stated in *Santosky*, bear indicia of a criminal proceeding. *Santosky*, 455 U.S. at 762, 71 L. Ed. 2d at 612, 102 S. Ct. at 1399. Such proceedings are begun by the filing of a petition containing specific factual allegations sufficient to declare the minor abused, neglected or dependent. 705 ILCS 405—2/13(2) (West 1998). The State, the children and the parents are all represented by counsel. 705 ILCS 405/1—5, 1—6, 2—17 (West 1998). Each party attempts to substantiate its respective position by the introduction of evidence and witness testimony at the hearing. 705 ILCS 405/2—18 (West 1998). The judge then makes a determination of whether the State has shown by clear and convincing evidence that a parent is an unfit person as defined in the Adoption Act (750 ILCS 50/1 (West 1998)). 705 ILCS 405/2—29(2) (West 1998). The statute clearly provides a blueprint for a legal process which, by application if not by intent, is adversarial in nature. The question then is, given the substantial liberty interest at issue and the adversarial nature of the proceedings, whether barring a parent from presenting a defense may result in an erroneous deprivation of those interests. We answer in the affirmative.

■ The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32, 96 S. Ct. at 902. The " 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.' " *Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32, 96 S. Ct. at 902, quoting *Joint Anti-Fascist Committee. v. McGrath*, 341 U.S. 123, 168, 95 L. Ed. 817, 852, 71 S. Ct. 624, 646-47 (1951). This court has recognized the natural parent must be afforded the opportunity to participate in the proceeding in a meaningful manner in order to comport with due process requirements. See *In re C.J.*, 272 Ill. App. 3d 461 (1995) (incarcerated parent does not have absolute right to be present at hearing but

must have opportunity to participate in proceeding); *In re D.R.*, 307 Ill. App. 3d 478 (1999) (where mother was not present at hearing, court violated her right to due process by barring her attorney from presenting a defense and cross-examining State witnesses).

Both the State and the public guardian cite *In re E.L.*, 152 Ill. App. 3d 25 (1987), in support of their argument that respondent, by her own wilful refusal to sign the answers to interrogatories, forfeited her right to be heard. In *E.L.*, this court stated "[d]ue process is not denied when a party fails to avail himself of the opportunity to be heard after it is offered to him." 152 Ill. App. 3d at 33. We find this precedent to be inapplicable to the instant case. First, the State in *E.L.* sought only an adjudication of wardship, not a termination of the natural parents' rights. Second, both parents in *E.L.* were represented by counsel, presented evidence and testified on their own behalf. Moreover, the due process violation alleged on appeal in *E.L.* did not concern an abrogation of respondents' right to meaningfully participate in the hearing process. Finally, we do not believe it a fair characterization that respondent in the case at bar "failed to avail" herself of the opportunity to be heard. Certainly her intransigence in refusing to sign the interrogatories created an obstruction in the orderly procession of the case. However, there were certainly much less restrictive measures the court could have taken to remedy the situation that would not have encroached on respondent's due process rights or worked a hardship on the court.

■ The purpose of the discovery process is to ascertain the truth and eliminate the element of surprise at trial. *In re Henry*, 175 Ill. App. 3d 778, 785 (1988). Supreme Court Rule 219(c) authorizes the court to impose sanctions, including barring an offending party from maintaining any particular claim or defense. 166 Ill. 2d R. 219(c)(iii). However, the purpose of imposing sanctions is to coerce compliance with the rules and orders, not to punish the dilatory party. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 68 (1995). Therefore, due to the drastic consequences that necessarily flow from the imposition of severe sanctions, they should only be imposed in the most extreme cases as a last resort to enforce discovery rules. See *Sander v. Dow Chemical Co.*, 166 Ill. 2d at 68; *In re D.R.*, 307 Ill. App. 3d at 482; *Kmoch v. Klein*, 245 Ill. App. 3d 308, 313 (1993). We believe this to be a particularly pertinent principle in termination of parental rights cases due to the fundamental nature of the interest in jeopardy and the increased likelihood of a natural parent being erroneously deprived of his or her child.

In the instant case, respondent's attorney indicated to the court she had prepared answers to the interrogatories on her client's behalf

that respondent simply refused to sign. As one alternative to completely barring a defense, the court could have asked respondent to swear to the completeness and accuracy of those answers as well as any number of other possible alternative courses of action.

## C

■ Finally, we must consider the State interests at stake in parental rights determinations. The government's function in such proceedings is in its role as *parens patriae*—promoting the welfare of the child and an administrative interest in reducing the cost and burden of such proceedings. *Santosky*, 455 U.S. at 766, 71 L. Ed. 2d at 615, 102 S. Ct. at 1401; *In re C.J.*, 272 Ill. App. 3d at 466. The *parens patriae* interest favors preservation, not severance, of the natural familial bonds. 705 ILCS 405/1—2 (West 1998); *Santosky*, 455 U.S. at 766-67, 71 L. Ed. 2d at 615, 102 S. Ct. at 1401.

Clearly, the State's interest in preserving the integrity of the family unit would be undermined by considering only that evidence marshalled by the State representative of the respondent's parenting deficiencies. It is evident there is a confluence of purpose between the State as *parens patriae* and the natural parent at all points prior to a determination of unfitness.

## III

■ The logical conclusion of this balancing process is that respondent's due process rights were violated by the court's sanction barring her from presenting a defense where there were less severe alternatives available and respondent's liberty interests in her children were at risk of erroneous deprivation if the court failed to hear evidence in support of respondent's expressed desire to reunite her family. Therefore, we remand this cause for a hearing in which the respondent may participate.

Reversed and remanded.

O'MARA FROSSARD, P.J., and GALLAGHER, J., concur.