*In re* S.B. *et al.*, Alleged to be Neglected and Dependent Minors (The People of the State of Illinois, Petitioner-Appellee, v. Michael Bose, Respondent-Appellant).

Fourth District No. 4—00—0110

Opinion filed September 21, 2000.—Rehearing denied October 26, 2000.

Adele M. Saaf, of Jennings, Novick, Smalley & Davis, of Bloomington, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 1999, the State filed a petition to terminate the parental rights of respondent, Michael Bose, regarding his minor children, G.B. (born October 13, 1989), M.B. (born June 3, 1991), and S.B. (born November 11, 1993). In January 2000, the trial court conducted a hearing on the termination petition and found respondent unfit. The court later determined that it would be in the children's best interests to terminate respondent's parental rights. Respondent appeals the trial court's termination of his parental rights, arguing that the trial

court exceeded its statutory authority under section 2—29 of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2—29 (West 1998)). We affirm.

## I. BACKGROUND

Because the parties are familiar with the evidence, and respondent neither challenges the sufficiency of the evidence nor contends that it was not in the best interests of the minor children that his parental rights be terminated, we will discuss only the facts relevant to our determination of the issue on appeal.

Respondent and Kimberly Butts were married, and two children were born of the marriage, M.B. and G.B. The parties divorced but shared joint custody of the minors with physical custody remaining with respondent. Respondent later married Darci Poppe, and one child, S.B., was born of the marriage. Subsequently, respondent and Poppe separated. Physical custody of S.B. remained with Poppe.

In January 1999, the State filed a petition for the adjudication of wardship of respondent's minor children, alleging that the minor children were (1) abused because respondent created a substantial risk of injury to S.B. (705 ILCS 405/2—3(2)(ii) (West 1998)); (2) neglected because their environment was injurious to their welfare due to (a) respondent's unresolved issues of anger control and (b) the fact respondent subjected S.B. to acts constituting emotional abuse (705 ILCS 405/2—3(1)(b) (West 1998)); and (3) dependent because respondent was unable to provide safe and proper care for them due to suffering from various mental disorders. The State sought shelter care of M.B. and G.B. but did not seek shelter care of S.B. Poppe, though, requested the court to place S.B. under the shelter-care order also. The trial court, without objection from respondent, awarded temporary custody and guardianship of the minor children to their respective mothers and placed all three minor children under the shelter-care order.

In May 1999, the trial court held a hearing where respondent stipulated to the allegation of neglect concerning his unresolved issues of anger control and the allegation that the minors were dependent. The State dismissed the remaining allegations. The trial court entered an adjudicatory order adjudicating the minor children neglected and dependent pursuant to sections 2—3(1)(b) and 2—4(1)(b) of the Juvenile Act. 705 ILCS 405/2—3(1)(b), 2—4(1)(b) (West 1998).

On July 1, 1999, the court held a dispositional hearing, adjudged the minors wards of the court, and ordered guardianship and custody to remain with the mothers of the minor children. On July 12, 1999, the State filed a petition under sections 1(D)(h), (D)(p), and (D)(i) of

the Adoption Act to terminate respondent's parental rights, alleging that respondent was unfit because (1) he committed acts of misconduct against S.B., (2) he has an inability to discharge his parental responsibilities due to mental impairment, mental illness, or mental retardation, and (3) he is depraved. 750 ILCS 50/1(D)(h), (D)(p), (D)(i) (West 1998).

In January 2000, at the fitness hearing, the trial court granted the State's request to dismiss the unfitness allegations pursuant to sections 1(D)(h) and (D)(i). Respondent stipulated to the State's exhibit No. 1, Dr. French's psychological evaluation of respondent, wherein Dr. French indicated that respondent's clinical scale elevations were similar to those possessed by persons diagnosed with paranoid personality or paranoid delusional disorder. Additional test results suggested that respondent experiences an anxiety disorder and a somatoform disorder. After considering this evidence, the trial court found respondent to be unfit because of his inability to discharge his parental responsibilities due to mental illness. 750 ILCS 50/1(D)(p) (West 1998).

At the subsequent dispositional hearing, *i.e.*, the best interests hearing, the trial court, without objection, took judicial notice of the file and respondent's criminal convictions in case Nos. 99—CF—106 (residential burglary and criminal trespass), 99—CF—169 (violation of an order of protection in connection with S.B.'s mother), and 99—CM—200 (violation of an order of protection regarding another woman). At the time of the hearing, respondent was incarcerated, serving a nine-year sentence for his convictions of residential burglary and criminal trespass.

The trial court conducted *in camera* interviews with the children and heard testimony from several witnesses, including the mothers of the minors and the respondent. Respondent testified that he is incarcerated in the Department of Corrections in Jacksonville, Illinois, which has no programs to help him address the concerns Dr. French raised in his evaluation. After considering the evidence and arguments of counsel, the trial court found it was in the children's best interests to terminate respondent's parental rights. The trial court terminated respondent's parental rights and ordered that the mothers of the minor children had the power to consent to the adoption of their respective children.

This appeal followed.

## II. ANALYSIS

■ Terminating parental rights is a two-step process. First, the trial court must find a parent unfit. Second, the court must consider

whether termination is in the best interests of the children. See *In re A.P.*, 277 Ill. App. 3d 592, 597-99, 660 N.E.2d 1006, 1010-11 (1996). In the present case, the trial court found respondent unfit and terminated his parental rights. Respondent does not appeal the trial court's finding of unfitness. Respondent appeals only the trial court's order terminating his parental rights, arguing that the trial court exceeded its statutory authority under section 2—29 of the Juvenile Act. 705 ILCS 405/2—29 (West 1998). Specifically, respondent argues that section 2—29 does not permit a court to terminate the parental rights of one parent, where the minor child was never placed in substitute care, but continuously resided with the other parent. The State argues that section 2—29 neither requires, as a condition to the termination of parental rights, that the court place a child in substitute care nor specifies that a court cannot appoint a child's parent as guardian.

●2 Section 2—29(2) provides:

"If a petition or motion alleges and the court finds that it is in the best interest of the minor that parental rights be terminated and the petition or motion requests that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court, with the consent of the parents, if living, or after finding, based upon clear and convincing evidence, that a parent is an unfit person ***, may terminate parental rights and empower the guardian of the person of the minor, in the order appointing him or her as such guardian, *** to consent to the adoption." 705 ILCS 405/2—29(2) (West 1998).

The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *People v. Latona*, 184 Ill. 2d 260, 269, 703 N.E.2d 901, 906 (1998). This section sets forth the process by which the juvenile court terminates parental rights and frees the minors for adoption. Respondent acknowledges that section 2—29 authorizes the trial court to appoint a guardian with the power to consent to the adoption of the minor, but argues that it does so only when the minor child is or has been in substitute care. In support of his argument, respondent relies on *In re M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702 (1993), and *In re A.K.*, 250 Ill. App. 3d 981, 620 N.E.2d 572 (1993), and argues that those courts construed the intent of section 2—29 as addressing the need for permanence for minors "who might otherwise languish in substitute care."

■ Based on our reading of those cases, neither court addressed the issue before this court, namely, whether section 2—29 prohibits a trial court from terminating the parental rights of a parent who has previously been found unfit, when the minor children are not in substitute care. In *M.M.*, the issue was whether the juvenile court,

pursuant to the Juvenile Act, may place conditions on the court-appointed guardian's power to consent to adoption. The supreme court found that the Juvenile Act makes no provision for the court to limit, restrict or in any way condition the guardian's power; therefore, the juvenile court exceeded its authority. Respondent's reliance on *A.K.* stems from the following language found in that case:

> "In a proceeding under section 2—29 of the [Juvenile] Act [citation] ***, the object and purpose to be obtained is a determination as to whether the child's parents have given up their parental rights or have been found to be unfit parents and, if so, whether the best interests of the minor are served by appointment of a guardian with power to consent to adoption of the child. [Citation.] The evil to be remedied is that which a child suffers when it is not in an adequate permanent home setting with adequate parent figures." *A.K.*, 250 Ill. App. 3d at 988, 620 N.E.2d at 577.

In *A.K.*, the petition alleging abuse was directed at both the mother and the "presumed" father. In contrast, here, the allegations were directed solely against respondent. In addition, in *A.K.*, the minor's biological father surrendered his parental rights and the court found the minor abused, made the minor a ward of the court, and placed him in the custody and under the guardianship of the Illinois Department of Children and Family Services (DCFS). Here, the trial court found respondent unfit but found the mothers of the minors fit and ordered that custody and guardianship remain with the mothers. Therefore, the evil to be remedied—a child's suffering when he is not in an adequate permanent home setting with adequate parent figures—was not an issue in the case at bar. Accordingly, we find respondent's reliance on these cases misplaced.

In addition, respondent does not explain how the trial court lacked authority to terminate his parental rights under section 2—29 simply because the minors' mothers had custody. The statute does not prohibit a trial court from terminating a noncustodial parent's rights when a child is residing with the other parent or when an outside guardian has not been appointed.

Here, the trial court did not need to appoint a separate guardian of the children because it ordered that custody and guardianship remain with the mothers of the minor children. See *In re T.R.*, 135 Ill. App. 3d 1017, 1021, 482 N.E.2d 372, 376 (1985) (it was unnecessary for the court to appoint a guardian, since the mother retained her parental rights with respect to the child). Notwithstanding, in its order terminating respondent's parental rights, the trial court included language that empowered the mothers, as guardians, with the right to consent to the adoption. See also *M.M.*, 156 Ill. 2d at 61, 619 N.E.2d at

708 (under the Juvenile Act, the order empowering the guardian to consent to adoption terminates parental rights (705 ILCS 405/2—29(2) (West 1998))).

The record shows that the trial court fully complied with section 2—29. At the dispositional hearing, the trial court found that the mothers of the minor children were fit, that DCFS guardianship was not necessary, and that the mothers were to retain guardianship and custody of their respective children. The State's petition to terminate respondent's parental rights prayed that the mothers, as guardians of the minors, be authorized and empowered to consent to the adoption of their children. The trial court, in its order to terminate respondent's parental rights, found that it was in the children's best interest that their mother have the right to consent to the adoption of their respective children and ordered that the mothers had the power to consent to the adoption of their children. Accordingly, the trial court did not exceed its authority when it terminated respondent's parental rights. Moreover, even though respondent's parental rights were terminated, if a petition to adopt the minor children were filed, respondent would be entitled to notice of the adoption proceedings so that he could appear "to present evidence to the court relevant to the best interests of the child[ren]." 750 ILCS 50/7 (West 1998).

We note that respondent does not argue on appeal that it was not in the minors' best interests to have his parental rights terminated. Nonetheless, upon review of the record, we conclude that the trial court's finding that it was in the minor children's best interests to terminate respondent's parental rights was not against the manifest weight of the evidence. *In re S.H.*, 284 Ill. App. 3d 392, 401, 672 N.E.2d 403, 409 (1996) (a reviewing court will not overturn a trial court's decision to terminate parental rights after a finding of unfitness unless it is against the manifest weight of the evidence). The evidence presented at the best interests hearing established that (1) respondent had several criminal convictions, was currently incarcerated serving a nine-year sentence, suffered from a mental illness for which he was currently unable to obtain services and, as a result, would not be able to adequately discharge his parental responsibilities in the near future; (2) the minors were happy, doing well in school, and liked their stepfathers; (3) it was not in the children's best interests to leave them in "limbo" for the time respondent was incarcerated; and (4) the children were with their respective mothers, both of whom have remarried and whose husbands were willing to adopt the children.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN and KNECHT, JJ., concur.