*In re* CHILEAN D. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Craig D., Respondent-Appellant).

First District (1st Division) No. 1—97—3811

Opinion filed March 29, 1999.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Nancy Grauer Kisicki, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

The issue in this case is whether a finding of parental unfitness, made during a proceeding to terminate parental rights, can stand when the petition to terminate parental rights is withdrawn. We conclude it cannot.

In August 1984, respondent was sentenced to prison after being found guilty of rape, deviate sexual assault and aggravated battery of a 78-year-old woman. In June 1986, petitions were filed seeking to adjudicate respondent's two children, Chilean D. and Cassandra D., wards of the juvenile court. On January 21, 1987, the children were adjudicated wards of the court. The children were initially placed under the private guardianship of their paternal grandfather, respondent's father, Ben D. Subsequently, in June 1991, the children were placed under the guardianship of the Illinois Department of Children and Family Services (DCFS).

On August 30, 1994, when Chilean was 11 years old and Cassandra was 10, the State filed supplemental petitions for the appointment of a guardian with the right to consent to the children's adoption. The supplemental petitions alleged that the respondent[1] was unfit and that it was in the best interests of the children that a guardian be appointed with the right to consent to their adoption. The prayer for relief requested that the court find that respondent was unfit, that his parental rights be terminated and that it was in the minors' best interest to appoint a guardian with the right to consent to the minors' adoption.

On August 11, 1997, after the close of the unfitness portion of the termination proceeding, the juvenile court found both parents unfit. Rather than proceeding to the best interests portion of the termination proceeding, the State requested and was granted a continuance. Subsequently, on September 10, 1997, the court entered a written or-

---

[1]Although the proceedings below also involved the children's mother, she is not a party to the present appeal.

der stating that the petition was withdrawn, with the findings of unfitness to stand.

There is some dispute as to what transpired during the subsequent hearing on September 10, 1997. The State contends that, despite the court's written order stating that the petition was withdrawn, only the "best interests" allegation of the petition was stricken. We will discuss both the jurisdictional issue as well as the substantive issues raised in this case.

We have thoroughly reviewed the record, including the transcripts. While it is correct that the State amended its petition only to remove the allegation that it would not be in the best interests of the minor that a guardian be appointed with the right to consent to adoption, and did not expressly request that the entire petition be withdrawn, it cannot be disputed that the State asked that the matter not proceed to the best interest phase of the proceeding *and* that parental rights not be terminated. Thus, the remaining prayer for relief was converted into a mere request to find the parents unfit. The State and public guardian chose not to proceed further with the petition but, instead, to continue the matter to an active calendar for a permanency review hearing, thereby removing the case from the termination calendar. Nevertheless, at the request of the State, the court ordered that the finding of unfitness could stand. The court further ordered that its order was final and appealable.

■ We conclude, looking at the record in its entirety, that the State effectively withdrew the petition and voluntarily dismissed the statutory action. Our conclusion is supported by the trial court's written order, which states "petition is withdrawn." Moreover, and contrary to the State's contention, the trial court's oral ruling, *when considered in the context of the entire hearing and the representations made therein*, clearly shows that the petition was withdrawn. We need not address whether a finding of unfitness, made during a proceeding to terminate parental rights, is a final and appealable order. An order of voluntary dismissal disposes of all matters pending before the circuit court rendering all orders that were final in nature, but that were not previously appealable, immediately final and appealable. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503, 687 N.E.2d 871, 875 (1997). Thus, we have jurisdiction over the entire matter before us, including the finding of unfitness.

■ We next address the substantive issues raised in this appeal. In order for a minor to be adopted, it is necessary that the natural parents consent to the adoption or that a court find that the natural parents are unfit. See, *e.g., In re Syck*, 138 Ill. 2d 255, 259, 562 N.E.2d 174, 176 (1990). Citing *In re Syck*, 138 Ill. 2d at 276, 562 N.E.2d at 176,

this court recently explained the procedure that is followed in such cases:

> "Our supreme court has held that, in cases such as the present one, \*\*\* trial courts must undertake a two-step process in ruling on adoption petitions. [Citation.] In a bifurcated trial, the court must first rule on whether the parent is fit. [Citation.] A parent's fitness is determined based upon his or her actions within the first 12 months after an adjudication of neglect. [Citation.]
>
> If the petitioner proves that one or more of the grounds for unfitness under the [Adoption] Act exist by clear and convincing evidence, the court then conducts the second phase of the bifurcated proceeding, in which it must determine whether termination of parental rights and allowance of an adoption petition would be in the child's 'best interests.' " [Citation.] *In re Davonte L.*, 298 Ill. App. 3d 905, 920, 699 N.E.2d 1062, 1072 (1998).

■ In order to terminate parental rights of a nonconsenting parent, such as is present here, an adjudication of unfitness is first required. See *In re Paul*, 101 Ill. 2d 345, 351, 461 N.E.2d 983 (1984). "To *effectuate* the termination of parental rights, the State need only prove one statutory factor of unfitness." (Emphasis added.) *In re A.S.B.*, 293 Ill. App. 3d 836, 843, 688 N.E.2d 1215, 1221 (1997). The adjudication of unfitness is had solely for the purpose of establishing a "basis" for the subsequent termination of parental rights. While it is true that the finding occurs during a separate hearing on the issue of fitness alone, this bifurcated procedure is solely for the purpose of ensuring a proper focus on the issue. See, *e.g.*, *In re V.S.*, 285 Ill. App. 3d 372, 375, 674 N.E.2d 437, 439 (1996). The unfitness phase is not an autonomous proceeding but, rather, one part of a bifurcated proceeding to terminate parental rights. We find the cases cited by the State to be inapposite in that all involved a finding of an individual's unfitness as a parent *and* the subsequent termination of parental rights of the individual. The State has not cited, nor has our independent research disclosed, any case that involved an adjudication of unfitness, outside the context of a proceeding to terminate parental rights, nor any statutory authority for doing so. It has been noted, although in a different context, that "[t]he Adoption Act does not provide for the filing of a 'petition for a determination of unfitness.' " *In re Filippelli*, 207 Ill. App. 3d 813, 821, 566 N.E.2d 412, 417 (1990). Allowing a finding of unfitness to survive on its own would have the practical effect of having this court recognize a new independent cause of action to determine the fitness of a parent. We believe that to do so would be to exceed our authority by engaging in judicial legislation. See, *e.g.*, *In re M.M.*, 156 Ill. 2d 53, 619 N.E.2d 702 (1993) (holding that juvenile

court exceeded its statutory authority by conditioning guardian's power to consent to an adoption).

■ A biological parent who does not consent to the adoption of his child must be found unfit as a condition precedent to a termination of parental rights so that an adoption can take place. This "condition precedent" does not create a separate cause of action. Nor can an *allegation* of unfitness, even when proven, convert a petition to appoint a guardian into a petition to find a parent unfit. We, therefore, hold that where the petition to terminate parental rights is later effectively withdrawn and the case is voluntarily dismissed, any preliminary findings of unfitness cannot stand as a final judgment.

To permit the State to adjudicate cases for the sole purpose of finding a parent unfit would be analogous to allowing a declaratory judgment action to determine a parent's fitness. The principles regarding declaratory actions pertain to the instant situation. A declaratory judgment action requires an actual and legal controversy between the parties in which the plaintiff is interested. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 383, 689 N.E.2d 1057, 1066 (1997). Here, as evidenced by the State's abandonment of the best interests portion of the petition, there exists no current controversy.

The State suggests that, although respondent's children do not wish to be adopted at the present time, they might decide later that they do wish to be adopted. In that event, the State argues, it would best serve the interests of judicial economy that the finding of unfitness not be relitigated. We are sympathetic to the State's argument and recognize that the trial court's concern with judicial economy may have been the rationale for its decision to let the unfitness finding stand. Nevertheless, "[t]his court may not issue advisory opinions that are contingent upon the possible happening of a future event. [Citation.] In addition, this court will not encourage piecemeal litigation. [Citation.]" *Stokes v. Pekin Insurance Co.*, 298 Ill. App. 3d 278, 284, 698 N.E.2d 252, 256 (1998). Although declaratory relief is permitted even when it resolves only "some part" of but not an entire matter, "the phrase 'some part' means not just an element of a claim but 'an entire claim which is part of more than one claim.' [Citation.]" *AG Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill. App. 3d 684, 693, 695 N.E.2d 882, 889 (1998). Moreover, it has been noted that "the [declaratory judgment] procedure should be used to afford security and relief against uncertainty with a view to avoiding litigation, not toward aiding it. [Citation]." *Drayson v. Wolff*, 277 Ill. App. 3d 975, 979, 661 N.E.2d 486, 490 (1996).

■ Our decision here alleviates the respondent's concern regarding a finding of unfitness that could potentially prejudice him in the

future. Our decision would basically be an exercise in futility if the State were at a later date to attempt to file another petition and argue that respondent is collaterally estopped from raising the issue of fitness.

In order to apply the collateral estoppel doctrine, a relevant factor to consider is whether a party fully litigated the issue in a previous case *and* there also must have been a final judgment *on the merits* in the previous case. *Ericksen v. Rush-Presbyterian-St. Luke's Medical Center*, 289 Ill. App. 3d 159, 168-69, 682 N.E.2d 79, 86 (1997); see also *County of Du Page v. Fraternal Order of Police Lodge 109*, 183 Ill. App. 3d 1027, 539 N.E.2d 863 (1989) (findings of fact and conclusions of law made by labor board in determining that petitioner union's proposed bargaining unit was inappropriate could not have *res judicata* or other estoppel effect on parties, where no final judgment was entered on merits, but board instead dismissed a petition on petitioner union's indication that it would not proceed with election for bargaining unit). In the present case, there was no final judgment on the merits. The final judgment required for this court to have jurisdiction, which we have previously noted is present in this case, is distinguishable from a final judgment *on the merits* for purposes of the collateral estoppel doctrine. Because the instant case was voluntarily dismissed when the State withdrew its petition, that dismissal did not constitute a final decision on the merits. Thus, respondent would not be collaterally estopped from relitigating the issue of fitness.

In view of the foregoing considerations, we affirm that portion of the trial court's September 10, 1997, order that states "petition is withdrawn" and we vacate that portion of the order that states "findings of unfitness to stand." Because we conclude, on procedural grounds, that the findings of unfitness must be vacated, we need not address the issue of whether the findings were correct on the merits.

Order affirmed in part; vacated in part.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.