NO. 4-07-0911          Filed 3/28/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: A.S.B., a Minor,                )    Appeal from
EMILY MARIE PASIERB,                    )    Circuit Court of
          Petitioner-Appellee,         )    Champaign County
          v.                           )    No. 07F184
TEMPLETON STERLING BISHOP,             )
          Respondent-Appellant.        )    Honorable
                                       )    John P. Shonkwiler,
                                       )    Judge Presiding.
_____

          JUSTICE MYERSCOUGH delivered the opinion of the court:

          Petitioner, Emily Marie Pasierb, and respondent

Templeton Sterling Bishop, are the biological parents of A.S.B.,

born September 5, 2002.  The parties were never married, but in

June 2003, Bishop signed a voluntary acknowledgment of paternity.

In October 2007, upon motion by Pasierb, the trial court

terminated Bishop's parental rights.  Respondent appeals.

Because Pasierb filed neither a petition to adjudicate wardship

nor a petition to adopt, the trial court lacked the statutory

authority to terminate Bishop's parental rights.  Therefore, we

reverse.

I. BACKGROUND

          In May 2007, Pasierb filed a petition to terminate

Bishop's parental rights, alleging Bishop was unfit on numerous

grounds.  The petition did not identify the statutory authority

on which it was based. In November 2007, following a hearing on Bishop's fitness, the trial court found Bishop unfit only on the ground of depravity. 750 ILCS 50/1(D)(i) (West 2006) (a rebuttal presumption of depravity exists if a parent is criminally convicted of at least three felonies, one of which took place within five years of the filing of the petition or motion for termination of parental rights). In October 2007, following the best-interests hearing, the court terminated Bishop's parental rights to A.S.B.

This appeal followed.

## II. ANALYSIS

The parties did not initially raise the issue of the trial court's authority to terminate Bishop's parental rights. This court directed the parties to address the issue, and the parties have filed supplemental briefs.

To invoke a trial court's jurisdiction over a matter, a party "must initiate a proceeding that provides the trial court with the relevant statutory authority to act." In re Marriage of Rhodes, 326 Ill. App. 3d 386, 390, 760 N.E.2d 592, 596 (2001) (finding that the trial court in a dissolution-of-marriage proceeding exceeded its statutory authority by declaring a party's consent to adoption void). A proceeding to involuntarily terminate parental rights may only be brought under the statutory authority of the Juvenile Court Act of 1987 (Juvenile Court Act)

(705 ILCS 405/1-1 through 7-1 (West 2006)) or the Adoption Act (750 ILCS 50/1 through 24 (West 2006)). See In re M.M., 156 Ill. 2d 53, 61, 619 N.E.2d 702, 708 (1993) (finding that a petition for termination of parental rights is filed under the Juvenile Court Act when the child has been previously adjudged abused, neglected, or dependent and all other involuntary-termination actions then must proceed under the Adoption Act); Patrick v. Patrick, 59 Ill. App. 3d 11, 13-14, 374 N.E.2d 1084, 1085 (1978) (finding that the trial court in a dissolution-of-marriage proceeding did not have jurisdiction to terminate parental rights and noting that the Juvenile Court Act and Adoption Act provide the exclusive authority by which parental rights may be terminated). In either case, the goals of the termination proceedings are the same: (1) to determine whether the natural parents are unfit and if so (2) to determine whether adoption is in the child's best interests. M.M., 156 Ill. 2d at 61, 619 N.E.2d at 708, citing D. Geraghty, Ending Family Ties: Termination of Parental Rights in Illinois, 79 Ill. B.J. 572, 574 (1991).

In his supplemental brief, Bishop argues the trial court lacked jurisdiction to terminate his parental rights because Pasierb filed neither a petition for the adjudication of wardship under the Juvenile Court Act nor an adoption petition under the Adoption Act. In contrast, Pasierb argues the court

- 3 -

had subject-matter jurisdiction pursuant to section 1(D) of the Adoption Act to find Bishop unfit and to terminate his parental rights without the need for Pasierb to file a petition to adopt and without the need to find the minor was a ward of the court.

### A. Pasierb Did Not File a Petition To Terminate Parental Rights Under the Juvenile Court Act

Under the Juvenile Court Act, any adult person may file a petition for adjudication of wardship alleging a minor is abused, neglected, or dependent.  705 ILCS 405/2-13(1), (2) (West 2006).  The petition may seek termination of parental rights and the appointment of a guardian of the person with the power to consent to the adoption of the minor.  705 ILCS 405/2-13(4) (West 2006).  The petitioner may by motion request the termination of parental rights any time after the entry of a dispositional order.  705 ILCS 405/2-13(4) (West 2006); but see In re R.K., 247 Ill. App. 3d 512, 515-16, 617 N.E.2d 502, 505 (1993) (finding that where the minors were found neglected but not yet made wards of the court, the trial court could properly consider the adjudication of wardship and termination of parental rights at the same time).  Section 2-29(2) of the Juvenile Court Act sets forth the process by which the court terminates parental rights and frees a minor for adoption.  705 ILCS 405/2-29(2), (4) (West 2006) (the court may terminate a parent's parental rights if the court finds the parent unfit as defined in section 1 of the Adoption Act and determines that termination of parental rights

is in the best interests of the minor); see also In re S.B., 316 Ill. App. 3d 669, 671-72, 736 N.E.2d 1164, 1166 (2000).

Neither the State nor Pasierb filed a petition for adjudication of wardship seeking termination of parental rights. Therefore, the Juvenile Court Act did not provide the statutory authority for the trial court's termination of Bishop's parental rights.

### B. The Adoption Act Does Not Provide a Means of Filing a Petition for Termination of Parental Rights Absent a Petition To Adopt

Because Pasierb did not file a petition for adjudication of wardship under the Juvenile Court Act, the only remaining authority under which the trial court could have terminated Bishop's parental rights is the Adoption Act. Pasierb clearly did not file a petition for adoption. Therefore, the issue is whether Pasierb could seek termination of Bishop's parental rights under the Adoption Act without filing a petition for adoption. This raises a question of statutory interpretation.

When construing a statute, this court's primary consideration is to determine and give effect to the legislature's intent. S.B., 316 Ill. App. 3d at 673, 736 N.E.2d at 1167. This court must presume the "legislature did not intend

- 5 -

to create absurd, inconvenient[,] or unjust results."  In re R.L.S., 218 Ill. 2d 428, 433, 844 N.E.2d 22, 26 (2006).  When determining the legislature's intent, this court considers the statute in its entirety, the subject matter the statute addresses, and the legislature's objective in enacting it.  R.L.S., 218 Ill. 2d at 433, 844 N.E.2d at 26.  The most reliable indicator of intent is the plain language of the statute.  In re D.F., 208 Ill. 2d 223, 229, 802 N.E.2d 800, 804 (2003).  The legislature has provided that the Adoption Act must be "construed in concert with the Juvenile Court Act."  750 ILCS 50/2.1 (West 2006); D.F., 208 Ill. 2d at 231, 802 N.E.2d at 806.

The Adoption Act provides the method by which a party may seek to adopt a child either related or unrelated to the party seeking to adopt.  A petition to adopt a child not related to the petitioner must be filed within 30 days after the child becomes available for adoption.  750 ILCS 50/5(A) (West 2006).  A person is available for adoption when, among other circumstances, the person is a child "to whose adoption no consent is required pursuant to [s]ection 8" of the Adoption Act.   750 ILCS 50/1(F)(b) (West 2006) (defining person available for adoption).  Section 8(a)(1) of the Adoption Act provides that a parent's consent to adoption is not required when, among other reasons, the parent is found by the court to be an unfit person.  See 750 ILCS 50/8(a)(1) (West 2006)

The Adoption Act provides that a petition to adopt must allege the names of natural parents of the child sought to be adopted, unless the natural parents' parental rights have been terminated.  750 ILCS 50/5(B)(f) (West 2006).  The petition must also allege that (1) the person or agency having the authority to consent to the adoption has consented or is willing to consent; (2) the person having the authority to consent is unfit, stating the ground therefor; or (3) no consent is required pursuant to section 8(f).  750 ILCS 50/5(B)(j) (West 2006); see also In re Chilean D., 304 Ill. App. 3d 580, 584, 710 N.E.2d 24, 27 (1999) (noting that if the natural parent does not consent to the adoption, the parent "must be found unfit as a condition precedent to a termination of parental rights so that an adoption can take place").  (Section 8(f) is no longer contained in the Adoption Act but had pertained to parents who were legally incompetent.)

The Adoption Act provides that as soon as practicable after the filing of a petition for adoption, the trial court shall hold a hearing for certain purposes, including the following:

> "If it is proved to the satisfaction of
> the court, after such investigation as the
> court deems necessary, that termination of
> parental rights and temporary commitment of

the child to an agency or to a person deemed competent by the court, including petitioners, will be for the welfare of the child, the court may order the child to be so committed and may terminate the parental rights of the parents and declare the child a ward of the court or, if it is not so proved, the court may enter such other order as it shall deem necessary and advisable."  750 ILCS 50/13(B)(d) (West 2006).

Clearly, the Adoption Act, when read as a whole, supports the conclusion that a trial court, as part of an adoption proceeding, may determine whether the natural parent is unfit and may terminate a natural parent's parental rights.  But compare Johnson v. Burnett, 182 Ill. App. 3d 574, 579, 538 N.E.2d 892, 895 (1989) (holding that parties not related to the child could not file an adoption petition and later prove the unfitness of the natural parents because the child was not available for adoption as defined in the Adoption Act; parents had to be found unfit before petition could be filed), with In re Petition of Filippelli, 207 Ill. App. 3d 813, 820-21, 566 N.E.2d 412, 416 (1990) (finding that parties not related to the child sought to be adopted could file a petition to adopt and allege therein that the natural parents were unfit).  Nothing in the Adoption Act,

however, gives the trial court the authority to terminate parental rights outside the adoption context.  All of the provisions in the Adoption Act addressing findings of unfitness and termination of parental rights are contained in the context of the adoption petition or parties seeking to adopt the child.

Pasierb argues that the authority for a termination of parental rights in the absence of a petition to adopt comes from the definition of "unfit" contained in the Adoption Act.  Section 1(D)(i) provides as follows:

> "'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption.  The grounds of unfitness are any one or more of the following ***:

> * * *

> (i) Depravity." 750 ILCS 50/1(D)(i)

> (West 2006).

Pasierb argues that the language "without regard to the likelihood that the child will be placed for adoption" demonstrates that a petition for adoption need not be pending in order for a court to find a person "unfit."  We disagree.

Notably, no cause of action for a determination of unfitness alone exists.  See <u>Chilean D.</u>, 304 Ill. App. 3d at 583,

710 N.E.2d at 27 (finding the unfitness phase of a termination-of-parental-rights proceeding is not an "autonomous proceeding" and refusing to recognize an adjudication of unfitness outside the context of a proceeding to terminate parental rights). Pasierb is asking this court to create a cause of action where none exists. Pasierb's reading of the Adoption Act would require this court to recognize a cause of action for the termination of parental rights based on the definition of unfitness contained in the Adoption Act. As noted, no basis for an adjudication of unfitness exists outside the context of a proceeding to terminate parental rights. Further, no proceeding to terminate parental rights exists outside the Juvenile Court Act (by way of a petition for the adjudication of wardship) or the Adoption Act (by way of an adoption petition).

Moreover, a plain reading of section 1(D) indicates that the language "without regard to the likelihood that the child will be placed for adoption" (705 ILCS 405/2-29(4) (West 2000)) is a reference to focusing on the parent's conduct when determining fitness. See In re Tashika F., 333 Ill. App. 3d 165, 169-70, 775 N.E.2d 304, 307 (2002) (examining the language "without regard to the likelihood that the child will be placed for adoption" and concluding that when deciding a parent's fitness, the court focuses only on the parent's conduct). Only after a parent has been found unfit does the trial court consider

the child's best interests, including the likelihood of adoption. Tashika, 333 Ill. App. 3d at 170, 775 N.E.2d at 308.

Pasierb argues that if this court concludes that a petition for termination of parental rights can only be filed as part of a petition for adoption or in conjunction with a petition for the adjudication of wardship under the Juvenile Court Act, such conclusion will lead to absurd results. Pasierb asserts that the mother of a child who properly cares for her child has no means by which to keep an unfit father from the child--at least until she marries someone who wants to adopt her child. Contrary to Pasierb's assertion, however, such a mother is not without remedy. See, e.g., S.B., 316 Ill. App. 3d at 675, 736 N.E.2d at 1168-69 (wherein the State filed a petition to adjudicate the respondent father's children wards of the court that also sought an order authorizing the children's mothers to consent to the adoption of the children; appellate court found that the trial court did not exceed its statutory authority by terminating the respondent's parental rights while the children continued to reside with their mothers). Pasierb may be able to seek relief under the Illinois Parentage Act of 1984 (750 ILCS 45/14 (West 2006)), which incorporates the custody and visitation provisions of the Illinois Marriage and Dissolution of Marriage Act (Dissolution of Marriage Act) (750 ILCS 5/101 et seq. (West 2006)). The Dissolution of Marriage Act gives the circuit court

the authority to deny visitation rights of a parent if the court finds that visitation would seriously endanger the child's physical, mental, moral, or emotional health. See 750 ILCS 5/607(c) (West 2006). Regrettably, the legislature has not created a cause of action for one parent seeking to terminate the other parent's rights other than by way of the Juvenile Court Act or Adoption Act. In any event, this court must not engage in judicial legislation by recognizing a cause of action the legislature has not created. See, e.g., Chilean D., 304 Ill. App. 3d at 583, 710 N.E.2d at 27.

To conclude, the plain language of the Juvenile Court Act and Adoption Act provides only two ways in which a party can seek to terminate the parental rights of another: (1) file a petition for adjudication of wardship under the Juvenile Court Act or (2) file a petition to adopt alleging that the consent or surrender of one or both of the parents is not required because the parent is unfit.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's order terminating Bishop's parental rights because the court lacked the statutory authority to do so.

Reversed.

APPLETON, P.J., and McCULLOUGH, J., concur.