No. 2-08-0947      Filed:  8-23-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 07--CF--1807 |
| COREY D. LATIMER, | ) ) ) | Honorable Ronald J. White, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the opinion of the court:

Defendant, Corey D. Latimer, was charged with two counts of unlawful delivery of a controlled substance within 1,000 feet of a church (720 ILCS 570/401(c)(1), (d), 407(b)(1), (b)(2) (West 2006)).  He moved to suppress evidence obtained as a result of an encounter with a police officer.  He also moved to suppress identification testimony by a different officer.  The trial court granted both motions, and the State now appeals.  We affirm in part, reverse in part, and remand for further proceedings.

Defendant was charged after an informant, Willie Hernandez, allegedly engaged in a controlled purchase of heroin from an individual known to Hernandez only as "L.A."  The transaction allegedly took place between 5 and 6 p.m. on February 22, 2007, in the parking lot of Noble's grocery store.  Hernandez purchased the heroin from an individual in a red Pontiac van.  No arrest was made on that date.  At the hearing on defendant's two motions, Rockford police officer

Darin Spades testified that he and another officer conducted "mobile surveillance" within a one- or two-block area around the grocery store. Other officers conducted video surveillance of the transaction. Spades testified that he was unable to see anyone inside the van, but he noted the van's license plate number and later discovered that the van was registered to defendant. Spades obtained copies of defendant's state-identification-card photograph and a Winnebago County jail booking photograph of defendant. Spades also had a still image of the driver of the van prepared from the surveillance videotape. Spades compared the surveillance videotape and the still image with the photographs of defendant. According to Spades, the individuals depicted in the photographs and the surveillance images "resembled one another" and "[i]t certainly could have been [defendant] in the driver's seat of [the van]." However, Spades was not prepared to seek an arrest warrant based on his comparison of the images; instead, he "wanted to further the investigation" and conduct a second buy. Spades testified that he did not attempt to identify defendant by means of a "photo lineup."

The record reflects that Hernandez attempted to purchase more drugs from "L.A." on March 5, 2007. Hernandez rendezvoused with an individual driving a white Buick, but was unable to complete a transaction. Marc Welsh, a detective with the Rockford police department, was on hand to apprehend the suspect if the transaction took place. When he learned that the transaction had fallen through, he followed the Buick, intending to stop the vehicle if its driver violated any traffic laws. The Buick proceeded west on Mulberry Street, turned onto North Independence Avenue, and came to a stop. Welsh testified that an individual emerged from the vehicle and started walking north. Welsh continued west but then circled back, proceeding east on School Street. Welsh observed that the person who had exited the Buick was walking in the roadway on Andrews Street. Welsh identified defendant as the person he had seen on Independence Avenue and on Andrews

Street. Welsh stopped defendant, explaining that defendant was suspected of selling drugs to an informant on February 22, 2007. Welsh also advised defendant that it was illegal to walk in the roadway when the sidewalks were clear. See 625 ILCS 5/11--1007(a) (West 2006). Welsh asked defendant for identification. Defendant told Welsh his name, address, and date of birth. Welsh did not place defendant under arrest.

The trial court ruled that, because Spades did not personally observe defendant in the Pontiac van, and because Spades was unsure whether the individual seen in surveillance images was defendant, Spades would not be permitted to identify defendant as the individual in the van. In addition, the trial court expressed its belief that, because of the poor quality of the surveillance images, it was impossible to make an identification from those images. The trial court also suppressed defendant's statements to Welsh, ruling that Welsh had no lawful basis for stopping defendant. Although the State appeals from both rulings, defendant concedes that his encounter with Welsh was not an unlawful seizure and that there is no basis for suppression of his statements to Welsh. Thus, the only issue before us is whether the trial court erred in barring Spades from identifying defendant at trial.

On appeal from a trial court's decision to suppress evidence, the trial court's findings of fact will be upheld unless they are against the manifest weight of the evidence. See People v. Walter, 374 Ill. App. 3d 763, 765 (2007). However, the ultimate question of whether the defendant is entitled to relief on a given set of facts is subject to de novo review. See Walter, 374 Ill. App. 3d at 765.

The State points to Spades' testimony that he was unable to positively identify defendant as the individual seen in surveillance images and could say only that the two individuals resembled one

another. The State posits that the trial court ruling barring "identification" testimony must have been based on "an erroneous recollection" of Spades' testimony. The State's argument, as we understand it, is that the trial court would have ruled as it did only if it believed that Spades' testimony was being offered as positive identification. The argument flies in the face of the record. When announcing its ruling, the trial court specifically noted that Spades had indicated only that the individual in the surveillance images "could have been" defendant. The trial court later noted that Spades had testified that he was not sure that the individual in the surveillance images was defendant.

Although we find nothing in the record to suggest that the trial court did not have a firm grasp on the salient facts, we believe that the trial court's legal analysis would have been more apt in a case involving traditional eyewitness identification. The trial court relied in large part on Manson v. Brathwaite, 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977), which set forth criteria for determining whether an out-of-court identification that was the product of an unnecessary and suggestive procedure is nonetheless sufficiently reliable that it may be admitted into evidence without offending due process. Factors germane to the issue of reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Brathwaite, 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253.

In Brathwaite, an undercover officer identified the defendant from a single photograph, a procedure that the parties agreed was suggestive. Brathwaite, 432 U.S. at 108-09, 53 L. Ed. 2d at 150, 97 S. Ct. at 2250. However, in contrast to this case, in Brathwaite, the officer had engaged in a face-to-face narcotics transaction with the individual whom he identified as the defendant. There

is no dispute that, in this case, Spades never laid eyes on whoever sold heroin to Hernandez; at most, Spades could testify only that a figure seen in surveillance images resembled photographs of defendant. Given that Spades cannot identify defendant based on personal observation, the questions of suggestiveness and reliability are entirely academic; under general evidentiary principles, Spades' testimony would be inadmissible to establish the identity of the subject who sold heroin to Hernandez. Whether individuals depicted in various photographs or other images resemble one another is simply a matter of opinion. "Opinion testimony concerns what a witness ' "thinks, believes, or infers in regard to facts in dispute, as distinguished from his personal knowledge of the facts themselves." ' " M. Graham, Cleary & Graham's Handbook of Illinois Evidence §700.1, at 514 (8th ed. 2004), quoting Mittelman v. Witous, 135 Ill. 2d 220, 243 (1989), quoting Black's Law Dictionary 985 (5th ed. 1979). It is a long-standing rule that "testimony of a lay witness in the form of an opinion may be introduced only if it is helpful to a clear understanding of his testimony or the determination of a fact in issue." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 517 (8th ed. 2004), citing Kolstad v. Rankin, 179 Ill. App. 3d 1022 (1989); see also Magna Trust Co. v. Illinois Central R.R. Co., 313 Ill. App. 3d 375, 393 (2000). We fail to see how, for identification purposes, Spades' opinion would enhance the trier of fact's understanding of whatever nonopinion testimony he might provide. Nor would his opinion be helpful to the trier of fact in determining any fact in issue. Nothing in the record shows that Spades has any special expertise in comparing images of individuals for identification purposes. The trier of fact would be perfectly capable of performing such a comparison itself, and (assuming that the State is able to lay a proper foundation for the images) it would be the trier of fact's responsibility to do so. Because

Spades' opinion would be inadmissible for identification purposes, there was no need to consider the issues of suggestiveness and reliability.[1]

Indeed, the State does not argue that an opinion as to the resemblance among figures depicted in photographs and videotapes would be admissible for identification purposes. The State's primary concern appears to be that the suppression ruling "might lead to confusion during the defendant's trial" if the State offers Spades' testimony for a different purpose. The State insists that "suppression of Detective Spades' identification testimony regarding the defendant as [sic] being at the scene was unnecessary." Moreover, the State worries that "problems may arise if *** Spades testifies that the person depicted in the [surveillance images] 'resembles' the defendant." According to the State, such testimony "would go to the investigative process." The State does not contend that the trial court's order actually bars Spades from testifying for purposes other than establishing defendant's identity. However, the State fears that, at trial, defendant will object that such testimony would be within the scope of the trial court's order. Supreme Court Rule 604(a)(1) authorizes the State to appeal from an order "the substantive effect of which results in *** suppressing evidence." 210 Ill. 2d R. 604(a)(1). It does not authorize the State to appeal from orders that are "unnecessary" or that "might

_____

[1]It is apparent from the record that, separate and apart from considerations of suggestiveness and reliability, the trial court simply did not share Spades' opinion that the figure seen in the surveillance images resembled defendant. (The court essentially expressed the view that, because of the poor quality of the surveillance images, they were not suitable for comparison.) We question whether the trial court's views as to the credibility of proposed opinion testimony should have any bearing on the admissibility of the testimony. However, because the issue of resemblance was not a proper subject of opinion testimony, we need not consider the matter further.

lead to confusion."  In essence, the State asks us to review an objection that has not yet been made, let alone ruled upon.  The State cites no authority that such prospective review is permissible and, in our view, what the State seeks is nothing more than an advisory opinion.  See In re Chilean D., 304 Ill. App. 3d 580, 584 (1999), quoting Stokes v. Pekin Insurance Co., 298 Ill. App. 3d 278, 284 (1998) (" '[t]his court may not issue advisory opinions that are contingent upon the possible happening of a future event' ").

For the foregoing reasons, the portion of the trial court's order suppressing defendant's statements to Welsh is reversed,  the portion of the order barring Spades from identifying defendant as the occupant of the Pontiac van is affirmed, and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

O'MALLEY and SCHOSTOK, JJ., concur.