**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190687-U

Order filed June 8, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* ADOPTION OF D.S., IV, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| (Daniel S., III | ) | Tazewell County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No.    3-19-0687 |
| | ) | |
| v. | ) | Circuit No.    19-AD-12 |
| | ) | |
| Debra Y., | ) | The Honorable |
| | ) | Timothy J. Cusack |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices Carter and Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Trial court lacked statutory authority to grant father's petition filed pursuant to the Adoption Act where sole purpose was termination of mother's parental rights.

¶ 2    Daniel S., III is the biological father of D.S., IV. Debra Y. is the mother of D.S. Daniel filed a petition to adopt D.S. and/or terminate Debra's parental rights. The petition alleged that Debra was unfit because she "suffers from severe mental illness," "has no current parental responsibilities for [D.S.]" and "has not had any contact with [D.S.] for over the past 18 months." Following a fitness hearing, the trial court found Debra unfit. Following a best interest

hearing, the trial court entered an order terminating Debra's parental rights. Debra appeals, arguing that (1) Daniel's petition was deficient; (2) she was denied effective assistance of counsel; and (3) the trial court erred in finding her unfit and terminating her parental rights. We reverse, finding that the trial court lacked authority to grant Daniel's petition.

¶ 3                                    BACKGROUND

¶ 4        D.S. was born in May 2015 to Debra and Daniel. In August 2015, Daniel filed a petition for determination of a parent/child relationship and sought visitation with D.S. In September 2015, Debra and Daniel entered an agreement granting Debra primary physical custody of D.S. and awarding Daniel substantial visitation with D.S. In early 2017, Daniel filed an emergency petition for a protective order against Debra. In February 2017, the trial court granted the petition and awarded parental responsibility of D.S. to Daniel.

¶ 5        In June 2019, Daniel filed a "Petition for Adoption and/or To Termintate [*sic*] Parental Rights." The petition alleged that Debra "is an unfit parent, who suffers from severe mental illness rendering her unfit and unable to care for and nurture the minor child." The petition further alleged:

> "Debra *** has no current parental responsibilities for the minor child as [she]
> was previously found to pose a serious endangerment to health, safety and welfare
> of the minor child. [She] has not had any contact with the minor child for the past
> 18 months due to her mental illness, mental instability, and endangerment to the
> child."

The petition requested that the trial court terminate Debra's parental rights to D.S. and award Daniel adoption of D.S.

¶ 6 Seven months earlier, Jacob R.Y., the father of Debra's other children, J.R.Y and D.R.Y., filed a petition seeking to adopt J.R.Y. and D.R.Y. on behalf of himself and his wife, Renae Y. That petition was filed in Tazewell County case No. 18-AD-36. In that case, a psychological evaluation of Debra was ordered by the court and completed by Dr. Ted Chapin.

¶ 7 The trial court appointed a guardian *ad litem* (GAL) to represent the interests of D.S. A copy of Dr. Chapin's psychological evaluation was provided to the GAL. One month later, the trial court entered an order stating that the GAL "shall be allowed to reference or quote any medical or psychological/psychiatric evaluations or records in her report." In September 2019, the GAL filed her report with the court.

¶ 8 According to the GAL's report, Debra last visited with D.S. in October 2017. Debra had six visits with him from September to October 2017. Those visits were supervised by Children's Home employees and were terminated "due to [Debra]'s action and treatment of the [Children's Home] workers. Children's Home workers were concerned for their safety because of Debra's "anger issues" and "aggressive manner", which Debra's children witnessed.

¶ 9 The GAL referenced Dr. Chapin's psychological report in which Dr. Chapin found that Debra "likely suffers from a combination of debilitating personality disorders and severe psychological symptoms," including "compulsive, histrionic and paranoid personality disorders, traits or features with anxiety, somatization, bipolar (mania) and/or likely undetermined thought disorder." Dr. Chapin concluded that Debra's "current and foreseeable ability to function as a healthy parent in the lives of her children or as a responsible co-parent with their children's fathers is likely to be significantly impaired."

¶ 10 The GAL met with D.S., who was four years old at the time of the visit. According to the GAL, D.S. is "very bonded to his father" and does not seem to remember his mother. The GAL

recommended that Debra's parental rights be terminated and that a judgment for adoption be entered.

¶ 11 On October 8, 2019, a joint hearing was held on the two petitions filed against Debra: the one filed by Daniel, and the one filed by Jacob and Renae. Testimony was provided by Jacob, Renae, Daniel and Debra.

¶ 12 Daniel testified that D.S. has resided exclusively with him for approximately the last three years. Debra had supervised visits with D.S. in the past, but those visits were terminated. Daniel testified that during the first six months of D.S.'s life, he noticed Debra becoming "very aggressive very easily." He also noticed that Debra had violent mood swings, switching from being "just perfectly fine" to "very aggressive and angry."

¶ 13 Daniel testified that Debra has never given him any financial support for D.S. She has never sent any cards to D.S. or attempted to contact him in the past three years. Daniel denied that Debra has asked about or shown any concern for D.S. in the past three years. He denied receiving any text messages from Debra. Daniel believes that D.S. does not remember Debra.

¶ 14 Debra testified that she is currently staying in a shelter for abused women. She claims she has been abused for many years. She stated that she has "been nonstop abused and controlled by Tazewell County Courthouse ***, DCFS, and Children's Home since December of 2015 if not before." Debra admitted that she pled guilty to assaulting Renae by choking her but stated that Renae "was the one that was aggressive." Debra said, "I pled guilty because I had to."

¶ 15 Debra testified that she was verbally told by Children's Home to have no contact with her children. On several occasions when storms arose, she texted her children's fathers because she was concerned for her children's wellbeing. She testified that the only reason she was not in her children's lives was because she was told she could not be. Otherwise, she "always would be."

4

¶ 16 With respect to her mental health, Debra stated: "I don't have a mental disorder, and I've never been diagnosed with a mental disorder." She testified that she sought counseling on her own during her separation and divorce. She denied ever being offered mental health treatment or medication. She also denied attempting suicide. She also denied that she was currently seeking mental or psychological treatment, stating: "I don't have a reason to."

¶ 17 Debra testified that she has experienced physical health problems and had to move in with her mother. She testified that she worked at two different jobs for approximately three weeks each during the last two years. She admitted that she was charged with and pled guilty to battery of a woman, Carolyn Apt, in the Tazewell County Courthouse but claimed that Apt was the instigator in that incident. She denied assaulting the husband of a former GAL, John Giraudo.

¶ 18 At the hearing, Debra's counsel acknowledged that the petitions filed against Debra alleged that Debra's "parental rights should be terminated because of mental illness" as well as "fail[ure] to show a reasonable degree of interest, concern, [or] support." Debra testified that she showed interest and concern in her children by sending text messages to her children's fathers and "praying for [her children's] health and for their safety and education." Debra testified that she recently spent $500 on the children and has "a whole trunkful of clothes, winter coats, *** toys" for them. She testified that if she had more money, she "would give everything to them, my whole heart and soul."

¶ 19 The GAL's report was admitted into evidence without objection. The report from Dr. Chapin was admitted into evidence over objection from Debra's counsel. At the end of the hearing, the trial court concluded that Debra was unfit because she "fail[ed] to maintain a reasonable degree of interest, concern or responsibility as to [her children's] welfare." Specifically, the court stated: "[S]he has not contributed financially to the needs of the children;

5

she has unresolved mental health issues; refused to seek appropriate treatment; and she's failed to visit with the children for a vast amount of time." While the court had concerns about Debra's mental health, it did not find her unfit due to mental illness.

¶ 20     On October 21, 2019, a best interest hearing was held. At the conclusion of the hearing, the trial court stated that Debra's parental rights were terminated and that Daniel's petition for adoption "will be granted." A written order entered on that date reflected that Debra's parental rights were terminated. Three weeks later, Debra filed a notice of appeal. Daniel never sought and the trial court never entered a judgment for adoption of D.S.

¶ 21                                   ANALYSIS

¶ 22     To invoke a trial court's jurisdiction over a matter, a party "must initiate a proceeding that provides the trial court with the relevant statutory authority to act." *In re Marriage of Rhodes,* 326 Ill.App.3d 386, 390 (2001). A proceeding to involuntarily terminate parental rights may only be brought under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2018)) or the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)). *In re A.S.B.*, 381 Ill. App. 3d 220, 221 (2008).

¶ 23     Under the Juvenile Court Act, any adult person may file a petition for adjudication of wardship alleging a minor is abused, neglected, or dependent. 705 ILCS 405/2–13(1), (2) (West 2018). The petition may seek termination of parental rights and the appointment of a guardian of the person with the power to consent to the adoption of the minor. 705 ILCS 405/2–13(4) (West 2018).

¶ 24     The Adoption Act provides the method by which a party may seek to adopt a child either related or unrelated to the party seeking to adopt. *A.S.B.*, 381 Ill. App. 3d at 223. A petition to adopt a child not related to the petitioner must be filed within 30 days after the child becomes

6

available for adoption. 750 ILCS 50/5(A) (West 2018). A person is available for adoption when, among other circumstances, the person is a child "to whose adoption no consent is required pursuant to [s]ection 8" of the Adoption Act. 750 ILCS 50/1(F)(b) (West 2018). Section 8(a)(1) of the Adoption Act provides that a parent's consent to adoption is not required when, among other reasons, the parent is found by the court to be an unfit person. See 750 ILCS 50/8(a)(1) (West 2018).

¶ 25    The Adoption Act provides that a petition to adopt must allege the names of natural parents of the child sought to be adopted unless the natural parents' parental rights have been terminated. 750 ILCS 50/5(B)(f) (West 2018). The petition must also allege that (1) the person or agency having the authority to consent to the adoption has consented or is willing to consent; (2) the person having the authority to consent is unfit, stating the ground therefor; or (3) no consent is required. 750 ILCS 50/5(B)(j) (West 2018); see also *In re Chilean D.,* 304 Ill.App.3d 580, 584 (1999) ("A biological parent who does not consent to the adoption of his child must be found unfit as a condition precedent to a termination of parental rights so that an adoption can take place.").

¶ 26    The Adoption Act provides that as soon as practicable after the filing of a petition for adoption, the trial court must hold a hearing to determine if "termination of parental rights and temporary commitment of the child to an agency or to a person deemed competent by the court, including petitioners, will be for the welfare of the child." 750 ILCS 50/13(B)(d) (West 2018). Thereafter, "the court may order the child to be so committed and may terminate the parental rights of the parents and declare the child a ward of the court or *** the court may enter such order as it shall deem necessary and advisable. *Id.*

7

¶ 27    As set forth above, a trial court, as part of an adoption proceeding, may determine that a natural parent is unfit and terminate his or her parental rights. See *id.*; *A.S.B.*, 381 Ill. App. 3d at 224. "Nothing in the Adoption Act, however, gives the trial court the authority to terminate parental rights outside the adoption context." *A.S.B.*, 381 Ill. App. 3d at 224. Additionally, no cause of action for the termination of parental rights alone exists in the Adoption Act. See *id.* at 225; see also *Chilean D.*, 304 Ill. App. 3d at 583 (finding no independent cause of action for a determination of unfitness of a parent); *In re Petition of Filippelli*, 207 Ill. App. 3d 813, 821 (1990) ("The Adoption Act does not provide for the filing of a 'petition for a determination of unfitness.' ").

¶ 28    Here, neither the State nor Daniel filed a petition to terminate parental rights under the Juvenile Court Act. Instead, Daniel filed a "Petition for Adoption and/or To Termintate [*sic*] Parental Rights" under the Adoption Act. While Daniel's petition alleged that it was, at least in part, a "Petition for Adoption," this was a misnomer. At the time the petition was filed, Daniel had already established his status as D.S.'s father. Additionally, no other party joined in the petition. Cf. *In re T.M.H.*, 2019 IL App (2d) 190614, ¶¶ 3-4 (biological mother and stepfather filed petition to adopt); *In re C.M.A.*, 306 Ill. App. 3d 1061, 1062 (1999) (biological mother and her same-sex partner filed petition to adopt). Thus, no adoption was necessary. Cf. *In re Marriage of Mancine*, 2014 IL App (1st) 111138-B, ¶ 61 (formal adoption necessary where husband was not biological father of child).

¶ 29    The only relief that Daniel sought in his petition was termination of Debra's parental rights. This is made clear by Daniel's failure to seek or obtain a judgment of adoption following the trial court's termination of Debra's parental rights. While the trial court verbally stated that

8

Daniel's petition for adoption "will be granted", Daniel never sought nor received a judgment of adoption, presumably because, as D.S.'s biological father, he did not need one.

¶ 30 In this case, Daniel sought only termination of Debra's parental rights, a cause of action not recognized under the Adoption Act. See *A.S.B.*, 381 Ill. App. 3d at 224-25. Thus, the trial court erred in granting Daniel's petition and terminating Debra's parental rights.

¶ 31 However, Daniel is not without a remedy. See *id*. at 225. He may file a petition to terminate Debra's parental rights under the Juvenile Court Act while maintaining custody of D.S. *See In re S.B.*, 316 Ill. App. 3d 669, 674-75 (2000). He may also seek relief under the Illinois Parentage Act of 2015 (750 ILCS 46/808 (West 2018)), which incorporates the custody and visitation provisions of the Illinois Marriage and Dissolution of Marriage Act (Dissolution of Marriage Act) (750 ILCS 5/101 *et seq.* (West 2018)). See *A.S.B.*, 381 Ill. App. 3d at 225-26. The Dissolution of Marriage Act gives trial courts the authority to restrict or eliminate a parent's decision-making responsibilities or parenting time if the "parent engaged in conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." See 750 ILCS 5/603.10(a) (West 2018). Daniel did not pursue one of these remedies; instead, he filed a petition to terminate Debra's parental rights under the Adoption Act, which the trial court had no authority to grant. See *A.S.B.*, 381 Ill. App. 3d at 226.

¶ 32 CONCLUSION

¶ 33 The judgment of the circuit court of Tazewell County is reversed.

¶ 34 Reversed.