2025 IL App (1st) 230927-U

No. 1-23-0927

First Division
June 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| BYLINE BANK, | ) | Appeal from the |
| | ) | Circuit Court of Cook County, Illinois |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2021 L 8384 |
| | ) | |
| BANK OF AMERICA, | ) | Honorable |
| | ) | Mary Colleen Roberts |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We dismiss the appeal for lack of subject matter jurisdiction where resolution of appeal would impact related federal bankruptcy proceedings.

¶ 2    This case arises from a state court action running in conjunction with related federal bankruptcy proceedings. Beginning at the end of 2017, Robert Kowalski (debtor), a bank account holder at plaintiff-appellant, Byline Bank (Byline), began purchasing what amounted to 36 cashier's checks from Byline, 34 of which named debtor as payee. In March 2018, debtor filed for

bankruptcy in the Northern District of Illinois, which resulted in the opening of a bankruptcy estate administered by a bankruptcy trustee. In August 2018, the trustee sent correspondence to Byline, asking it to freeze and turn over any and all assets related to or held by debtor. In late August 2018, debtor began presenting the cashier's checks for payment to various bank branch locations administered by defendant-appellee, Bank of America. Although some of the checks did not contain certain state statutorily required endorsements, Bank of America deposited them into the account of debtor's sister, who therein held a legal client trust account. Bank of America then presented the checks to Byline for payment, which was effectuated.

¶ 3    Following Byline's payment of the checks, the trustee filed an adversary claim against Byline in the bankruptcy proceedings, which alleged that Byline had violated the estate's automatic stay on debtor's assets. Byline subsequently issued a demand letter to Bank of America pursuant to Illinois' Uniform Commercial Code, 810 ILCS 5/1-101, *et. seq.* (West 2020) (UCC), which purported to tender its defense and/or indemnification in the federal proceedings. After Bank of America rejected tender, Byline filed this action in the circuit court of Cook County, alleging that Bank of America had breached certain statutory warranties as governed by the UCC, when presenting the cashier's checks for payment. Bank of America filed an answer and asserted as an affirmative defense, lack of standing. Following discovery and both parties' filing of motions for summary judgment, the circuit court denied Byline's motion, granted Bank of America's motion where it determined that Byline lacked standing, and further found that Byline had forfeited any argument as to its claim concerning defense and indemnification.

¶ 4    Now on appeal, Byline argues that the circuit court erred in granting summary judgment in favor of Bank of America. For the reasons that follow, we dismiss the appeal.

¶ 5                                    I. BACKGROUND

¶ 6                    A. Proceedings Prior to Litigation

¶ 7    The following facts are derived from the record on appeal.[1] Byline is a bank chartered in Illinois with its principal place of business in Chicago. Debtor maintained certain bank accounts at Byline on behalf of himself or by entities he owned or controlled. Bank of America is a bank with its principal place of business in Charlotte, North Carolina, but has various branch locations throughout Illinois. According to the parties, debtor's sister, Jan Kowalski, maintained a client trust account (IOLTA) with Bank of America.

¶ 8    Beginning on December 22, 2017, and ending on or before August 22, 2018, debtor purchased 36 cashier's checks from Byline totaling $352,166.35. On 34 of the checks, debtor was named as the payee, *i.e.*, the one designated to receive the money. "Premium Title" was the named payee for the two remaining checks, though it is unclear how this entity relates to this litigation. Prior to August 22, 2018, all checks remained outstanding in the debtor's possession.

¶ 9                    1. Bankruptcy Petition

¶ 10   On March 29, 2018, debtor filed a Chapter 11 voluntary bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Illinois.[2] Subsequently, the Bankruptcy Court appointed a trustee for the debtor's estate (Trustee).

¶ 11   On August 22, 2018, the Trustee sent a letter to Byline informing it of the bankruptcy proceeding and attached an order noting the Trustee's appointment. Therein, the Trustee requested a freeze, turnover, and wire transfer of all Byline bank accounts held by or related to the debtor, specifically with regard to the following entities: Piorun Properties, LLC; Indomitable, LLC;

---

[1]The record reflects that Judge Margaret Brosnahan presided over this case until the time of her retirement, after which time the matter was assigned to Judge Mary Colleen Roberts.

[2]The record reflects that the petition was filed on March 30, 2018, which differs from the date listed in the Trustee's adversary complaint against Byline.

Invincible, LLC; and Burros Blancos, LLC. Notably, the letter did not mention the outstanding cashier's checks.

¶ 12                              2. Deposit of Cashier's Checks

¶ 13    Beginning on or after August 31, 2018, through October 25, 2018, debtor deposited the outstanding cashier's checks into his sister's IOLTA account at Bank of America. All 36 checks were accepted and deposited by Bank of America. Thirty-two of the checks contained the following endorsement: "Credited to the Account of the Within Named Payee Endorsement Guaranteed Bank of America, N.A." Three of the checks were endorsed "Deposit Only." One check contained the debtor's endorsement as well as that of his sister.

¶ 14    On various dates on or after August 31, 2018, Bank of America presented the 36 checks to Byline for payment and provided various statutory warranties upon its request. First, it warranted that, pursuant to sections 3-417 and 4-208 of the UCC (810 ILCS 5/3-417), (810 ILCS 5/4-208) (West 2020)), it was entitled to enforce the checks or was authorized to obtain payment of a person entitled to enforce the checks. Second, it warranted that, pursuant to sections 5/3-416 and 5/4-207 (810 ILCS 5/3-416), (810 ILCS 5/4-207) (West 2020)), it was entitled to enforce the checks, and that all signatures were authentic and had been verified. Finally, it warranted that, pursuant to section 5/4-205 (810 ILCS 5/4-205) (West 2020)), it had made payment or had deposited the funds into the account of the person entitled to enforce each instrument.

¶ 15                              3. Trustee's Lawsuit

¶ 16    On April 25, 2019, and amended on August 19, 2021, the Trustee filed a three-count adversary complaint against Byline in the bankruptcy proceeding pursuant to 28 U.S.C. § 157

(West 2020) (the Trustee's Lawsuit).[3] Therein, the Trustee alleged that Byline's issued cashier's checks constituted property of the bankruptcy estate for which Byline had notice, and that the payment of the checks had caused a loss of $352,166.35 to the estate. The Trustee further alleged that Byline had been aware of the outstanding checks and should have informed the Trustee of their existence. Finally, the Trustee alleged that Byline had retained the ability to deny payment of the checks and failed to inform the Trustee of the deposit into the IOLTA account. The Trustee also alleged that, because only one of the checks had been endorsed by the debtor when presented to Bank of America, Byline had subsequently released the funds without proper endorsement. As such, Count I alleged violation of the automatic stay pursuant to section 362(a) of the bankruptcy code (11 U.S.C. § 362(a) (West 2020)). Count II alleged conversion. Count III alleged unauthorized transfer of estate property and thus sought turnover, fees, and costs.

¶ 17                              4. Byline Seeks Defense

¶ 18    On March 6, 2020, Byline issued a letter to Bank of America which attached a copy of the Trustee's Lawsuit. Byline recited Bank of America's alleged obligations and purported breach of statutory warranties, and subsequently tendered its defense and indemnification to Bank of America pursuant to section 5/3-119 of the UCC (810 ILCS 5/3-119) (West 2020)). It further noted that, in the event Bank of America declined tender, it was given notice that it would be bound by any findings of liability or damages against Byline in the Trustee's Lawsuit.[4] Bank of America declined to accept tender.

¶ 19                           5. Byline's State-Court Complaint

---

[3]At the time of filing, the Trustee alleged that debtor and his sister had been indicted for federal bankruptcy fraud.

[4]On May 13, 2025, the Bankruptcy Court issued its decision in the "Trustee's Lawsuit," the outcome of which we discuss, in relevant part, later in this disposition.

¶ 20    On August 19, 2021, Byline filed a two-count complaint in the circuit court of Cook County against Bank of America. Therein, Byline alleged that Bank of America owed a duty to defend and/or indemnify Byline for any claims or damages incurred as a result of Bank of America's acceptance and payment of the cashier's checks, with Bank of America to be bound by any findings made in the Trustee's Lawsuit. Count I sought a declaratory judgment, and Count II sought reimbursement for any money damages, losses, and expenses arising from Bank of America's breach of various statutory warranties under the UCC.

¶ 21    On January 13, 2022, Bank of America filed an answer and an affirmative defense, lack of standing. It further denied that it owed Byline a duty to defend and/or indemnify, that it had breached various UCC warranties, and that it was bound by any findings or determinations in the Trustee's Lawsuit. As to its affirmative defense, Bank of America alleged that Byline did not have standing following the filing of the bankruptcy petition because such claims, if any, belonged to the payee on the checks, *i.e.*, the debtor and now the bankruptcy estate.

¶ 22    On February 15, 2022, Byline filed a response to Bank of America's affirmative defense, which rejected standing as a legal conclusion and otherwise denied its applicability.

¶ 23                    6. Motions for Summary Judgment

¶ 24    Following the close of discovery, each party filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005) (West 2020)), which the circuit court initially treated as cross-motions.

¶ 25                    a. Byline's Motion[5]

---

[5]Although Byline's motion for summary judgment is not the subject of this appeal, we recite the relevant arguments therein to the extent that they overlap with Bank of America's motion.

¶ 26 First, Byline contended that Bank of America's improper endorsement, authorization, and payment of the cashier's checks, when none had been made payable to the debtor's sister and only one had been signed by the debtor as payee, violated the UCC. Byline further argued that Bank of America had improperly warranted that it was entitled to enforce the checks or was otherwise authorized to obtain payment on behalf of a person who was otherwise so entitled. Further, Byline continued, even if it had any basis to refuse payment in light of such warranties, Illinois law did not allow for Byline to stop payment on the checks, even if the Trustee had asked it to do so, citing *Mid-America Bank, FSB v. Charter One Bank FSB,* 232 Ill. 2d 560 (2009), and *Able & Associates, Inc. v. Orchard Hill Farms of Illinois, Inc.*, 77 Ill. App. 3d 375 (1979), in support.

¶ 27 Second, Byline rejected the applicability of Bank of America's affirmative defense of lack of standing arguing that neither the debtor nor the Trustee could bring forth its claim for breach of statutory warranties. Byline reasoned that a majority of the cashier's checks had been paid for and issued prior to the filing of the bankruptcy petition, and that eventual payment had come from Byline's own coffers, not the debtor's accounts. Finally, Byline argued that Bank of America was bound by any determinations made in the Trustee's Lawsuit.

¶ 28 In response, Bank of America argued that the UCC allowed banks to deposit unendorsed checks so long as there was no concern of crediting the wrong account, which was not at issue here. Further, Bank of America continued, it had otherwise complied with all other statutory requirements, namely in ensuring that the check had not been altered and that the bank had been unaware of the bankruptcy proceedings at the time of deposit. Bank of America also rejected Byline's contention that it had been unable to stop payment on the checks, given that the debtor had not deposited them until after the date of the bankruptcy filing.

¶ 29    Second, Bank of America continued, despite Byline's insistence, it was not automatically liable for any judgment entered against Byline in the Trustee's Lawsuit. In particular, Bank of America contended that Byline's notice under section 5/3-119 of the UCC had been procedurally improper and further inapplicable. Third, Bank of America argued that Byline lacked standing to pursue its claims. Bank of America reasoned that the date of payment on the checks was irrelevant where Byline had known of the bankruptcy stay before deposit with Bank of America, and that, ultimately, only the debtor would have had standing to bring a suit for breach of warranty.

¶ 30    Byline replied, reiterating that Bank of America had not complied with various portions of the UCC and had not acted in good faith. Byline further argued that it had standing to bring its breach of warranty claims given its role as both "drawer" and "drawee" of the cashier's checks as defined within the statute. Finally, Byline asserted that it had properly given notice to bind Bank of America to any findings made in the Trustee's Lawsuit.

¶ 31                              b. Bank of America's Motion

¶ 32    In sum, Bank of America initially observed that Byline's complaint was an attempt to evade liability in the Trustee's Lawsuit, given that Bank of America had not been named as a defendant therein, and as Byline had failed to file a third-party action against Bank of America in that same litigation.

¶ 33    Next, Bank of America argued that Byline lacked standing to bring the lawsuit as it violated the automatic stay in the bankruptcy proceedings, citing 11 U.S.C. §§ 541 and 542 in support. Bank of America reasoned that Byline's interest in the checks terminated after they were issued to the debtor, and that the checks subsequently became property of the bankruptcy estate after their deposit into the IOLTA account. Further, Bank of America noted, even though the Trustee's letter to Byline had not mentioned the checks, the Trustee had not abandoned them as property of the

estate, given the existence of the adversary lawsuit, citing section 554(d) of the bankruptcy code (11 U.S.C. § 554(d) (West 2020)), in support. Finally, Bank of America noted, Byline's knowledge of the stay required it to freeze all of the debtor's accounts and further prevent him from depositing the checks.

¶ 34    Bank of America additionally argued that it had properly and in good faith paid the checks pursuant to the UCC and further, that there was no genuine issue of material fact that it owed a duty to indemnify or defend Byline. Moreover, Bank of America continued, the claim was not ripe because, according to Bank of America, Byline had been required to file a third-party complaint against Bank of America in the bankruptcy case pursuant to the Federal Rules of Civil Procedure.

¶ 35    Byline's response maintained that it had standing based on virtually identical arguments made in its reply to its own motion, and that it had been unable to stop payment on the cashier's checks.

¶ 36    Bank of America replied that it had not breached any warranties. It further maintained that Byline did not have standing, as only the debtor had been the named payee on the cashier's checks and thus was the only one who could enforce any breach of warranty claims against Bank of America, if any. Finally, Bank of America observed that Byline had seemingly "abandon[ed] its indemnification claims" by failing to respond to its arguments concerning express and implied indemnification.

¶ 37                            3. Circuit Court Ruling

¶ 38    On March 16, 2023, the circuit court held oral argument on the parties' cross-motions. Subsequently, the court issued a written order and denied Byline's motion for "the reasons stated

on the record" and "because there [were] issues of fact."[6] The court also took Bank of America's motion under advisement.

¶ 39     On April 20, 2023, the court entered a written order granting Bank of America's motion. Notably, the court found that Byline lacked standing to bring its claims following the filing of the bankruptcy petition and the entry of an automatic stay on the debtor's assets. The court reasoned that Byline's interest in the cashier's checks had terminated at the time the checks were issued to the debtor, and when the checks had been deposited in the IOLTA account. Additionally, the court found that, because Byline had seemingly conceded any argument against its failure to state a claim for duty to defend and/or indemnify, Bank of America owed no such duty.

¶ 40     On May 19, 2023, Byline filed a timely notice of appeal. Pursuant to Supreme Court Rule 352(a) (eff. July 1, 2018), we granted the parties' request for oral argument.

¶ 41                                   II. ANALYSIS

¶ 42                                   A. Arguments

¶ 43     Byline contends that the circuit court erred in granting summary judgment in favor of Bank of America as it has "statutory standing" to pursue its claims under the UCC. Additionally, Byline maintains that the circuit court's discussion of duties to defend and indemnify ignores Byline's actual claims under the UCC. Bank of America responds that Byline's assertion of statutory standing, first raised here on appeal, is forfeited, and even if preserved for our review, is without merit. Further, Bank of America contends that the circuit court properly concluded that Byline's indemnification and duty to defend claim failed.

¶ 44                                   B. Jurisdiction

---

[6]The appellate record does not contain any report of proceedings.

¶ 45     Although neither party has raised the issue of this court's jurisdiction, as a reviewing court, we are obligated to examine ours, as well as that of the circuit court. *Cohen v. Salata*, 303 Ill. App. 3d 1060, 1063 (1999). "Subject matter jurisdiction is the power of the court to hear and determine the general question presented to it and grant the particular relief sought." *Id.* (citing *In re M.M.*, 156 Ill. 2d 53, 64 (1993)). "Generally, if a complaint states a claim belonging to a general class over which the court's authority extends, its jurisdiction attaches." *Id.* "However, the fact that a complaint states a cause of action belonging to the general class over which a state court traditionally exercises authority is not conclusive of that court's subject matter jurisdiction." *Id.*

¶ 46     The supremacy clause of article VI of the United States Constitution provides that federal law "is the supreme Law of the Land[,]" where even a court of general jurisdiction may lack authority when its power to act has been divested by federal law. U.S. Const., art. VI, cl. 2; *Cohen*, 303 Ill. App. 3d at 1063-64. Consequently, when the power of the state court to act is divested by federal law, the only proper action is to dismiss the cause of action. See *In re Country Treasurer and Ex Officio County Collector of Cook County*, 308 Ill. App. 3d 33, 39 (1999); *Cohen*, 303 Ill. App. 3d at 1066 ("[a]bsent subject matter jurisdiction, the court's only function is to announce the fact that it lacks jurisdiction and dismiss the cause.")

¶ 47     There is a plethora of federal statutes that divest state courts of subject matter jurisdiction over causes of action which might otherwise be properly maintained in state court. See *Cohen*, 303 Ill. App. 3d at 1063. Included among them, and relevant here, is the United States Bankruptcy Code. *Id.* at 1064. It is well-established that this statutory scheme generally divests state courts of jurisdiction over subject matter addressed therein. See 28 U.S.C. § 1334(b) (West 2020) (except as otherwise provided or as dictated by any act of Congress, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under [the bankruptcy code], or

arising in or related to cases under [the bankruptcy code].”); 28 U.S.C. § 1334(e)(1) (West 2020) (in bankruptcy cases and proceedings, the “district court in which a case…is commenced or is pending shall have exclusive jurisdiction” of “all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate”); see also *Cohen*, 303 Ill. App. 3d at 1064; *In re Marriage of Rednour*, 2018 IL App (5th) 160205-U, ¶ 12.

¶ 48    Relevant here, section 362 of the Bankruptcy Code governs the imposition of an automatic stay of certain activities in relation to interests and property included in a bankruptcy estate. 11 U.S.C. § 362 (West 2020). The automatic stay is “designed to give the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor’s assets for repayment and reorganization of his or her obligations.” *In re Petitt*, 217 F.3d 1072, 1077 (9th Cir. 2000). “The stay is self-executing, effective upon the filing of the bankruptcy petition,” and “sweeps broadly.” *Id.*; *Cohen*, 303 Ill. App. 3d at 1064 (“The automatic stay takes effect the moment a bankruptcy petition is filed and without regard to whether a party or a state court has notice of the filing.”) (Internal citations omitted.) We find significant for purposes of our review here that the stay applies to “any act to obtain possession of property of the estate or of property from the estate[.]” 11 U.S.C. 362(a)(3) (West 2020).

¶ 49    As relevant to the issue of standing, the parties dispute whether Byline’s case against Bank of America concerns property or legal interests that belong to the debtor in the bankruptcy case, given the existence of the automatic stay in the bankruptcy proceedings.

¶ 50    The bankruptcy estate is defined broadly as “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541 (West 2020). Because this scope is broad, “every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach” of the provision. *In re Miles*, 652 B.R. 512, 521 (Bankr. N.D.

Ill. 2023) (Internal quotation marks and citation omitted omitted.) This may even include causes of action for pre-petition activities. See *id.* (collecting cases). Whether a debtor's interest constitutes property of the estate is a federal question defined by federal law. *In re McKeever*, 550 B.R. 623, 636 (Bankr. N.D. Ill. 2016). In that regard, generally, state courts are bound to follow the interpretation of such statutes by the federal courts. *Cohen*, 303 Ill. App. 3d at 1065 (citing *Elgin, Joliet & Eastern Ry. Co. v. Industrial Comm'n*, 9 Ill. 2d 505, 507 (1956)).

¶ 51    During oral argument before this court, counsel for Byline disclosed that during the pendency of this appeal, the Bankruptcy Court issued a Memorandum Opinion in the Trustee's adversary proceeding. See *In re Kowalski*, No. 19-00626, Adv. Proceeding No. 19-00626, 2025 WL 1392201 (Bankr. N.D. Ill. May 13, 2025).[7] We take judicial notice of the Bankruptcy Court's decision.[8] Relevant here, the court ruled that the Trustee had demonstrated his right to the cashier's checks, "which at case filing were the property of the Debtor" and thus "the cashier's checks became property of the bankruptcy estate." *Id.* at *11. Further, the court noted, the Trustee's right to the cashier's checks is "unconditional, as established by Bankruptcy Code § 541 which makes a debtor's property at filing property of the bankruptcy estate." *Id*. We believe the Bankruptcy Court's decision settles whether and when the cashier's checks became a part of the bankruptcy estate.

---

[7]Although the Bankruptcy Court's decision was filed on May 13, 2025, counsel for Byline stated to the court that the decision became final on May 28, 2025, the day of oral argument.

[8]See *Aurora Loan Services, LLC v. Kmiecik*, 2013 Ill App (1st) 121700, ¶ 37 (reviewing court may take judicial notice of a written decision that is part of the record of another court, as such decisions are readily verifiable facts capable of instant and unquestionable demonstration) (Internal quotation marks and citations omitted); see also *Metropolitan Life Insurance Co. v. American National Bank & Trust Co.*, 288 Ill App. 3d 760, 764 (1997) (appellate court may take judicial notice of public documents that are included in the records of other courts) (Internal citation omitted.)

¶ 52    The weight of federal authority is to the effect that *any* case filings potentially implicating the bankruptcy's automatic stay are void. See *Cohen*, 303 Ill. App. 3d at 1064-66 (assessing that majority of federal courts of appeals hold that actions taken in violation of the automatic stay are void as a matter of law absent affirmative relief from federal bankruptcy courts, and thus cannot invoke the subject matter jurisdiction of the state circuit court); *In re Application of the County Collector for Delinquent Taxes*, 291 Ill. App. 3d 588, 591 (1997) (any judgment taken against the bankruptcy estate while the stay is in effect is void *ab initio*). Illinois courts have also held that, when an automatic bankruptcy stay is in place, the federal bankruptcy code divests a state court of jurisdiction to adjudicate any claims against the debtor after a bankruptcy petition has been filed. *Cohen*, 303 Ill. App. 3d at 1065-66; *Little Texas, Inc. v. Buchen v.*, 319 Ill. App. 3d 78, 82 (2001).

¶ 53    As stated previously, Byline claims that its standing is derived from the UCC and thus, its claims are independent of the bankruptcy proceedings. Standing and subject matter jurisdiction are separate and distinct concepts. Standing, which is an affirmative defense, does not implicate the court's subject matter jurisdiction, and if not raised by the defendant, may be forfeited. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010)). Subject matter jurisdiction, on the other hand, relates to the power of the court to hear a controversy can be raised at any time, and cannot be forfeited. See *In re M.W.*, 232 Ill. 2d 408, 414-15, 417 (2009). Thus, while standing asks whether a party has a real interest in the outcome of a controversy, subject matter jurisdiction asks whether the court has the power to hear the controversy. *Id.* at 414-15. The absence of either result in dismissal. See *Wexter v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004) (where a party lacks standing, the proceeding must be dismissed); *Cohen*, 303 Ill. App. 3d at 1066 (where the court lacks subject matter jurisdiction, its only function is to announce the fact that it lacks jurisdiction and dismiss the cause).

¶ 54    Given the Bankruptcy Court's declaration that the subject cashier's checks are the property of the bankruptcy estate, we have no jurisdiction to make any determinations that could potentially impact its administration. Significantly, some authorities suggest that even the mere determination of the scope and applicability of the automatic stay is one that lies solely within the power of the federal courts. See *In re Gruntz*, 202 F.3d 1074, 1083 (9th Cir. 2000) ("In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay.") Indeed, issuing relief on a request such as the one disputed by the parties implicates more than "the act of a state court merely interpreting federal law[,]" but rather becomes an "intervention in the operation of an ongoing federal bankruptcy case[.]" *Id.* at 1083; *Gonzales v. Parks*, 830 F.2d 1033, 1035-36 (9th Cir. 1987) (generally, claims for relief in bankruptcy court under bankruptcy code is within federal courts' exclusive jurisdiction as determined by Congress, and state court judgment entered in a case that may fall within the federal court's exclusive jurisdiction may be considered a collateral attack on the federal courts); *Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969, 973 (Bankr. N.D. Ill. 1992) (collecting cases for proposition that both bankruptcy court and other *federal* court in which other litigation exists may construe the automatic stay); but see *In re Weller*, 189 B.R. 467, 471 (Bankr. E.D. Wis. 1995) (state court had jurisdiction to determine whether pending government-prosecuted trial was subject to bankruptcy stay imposed after case was filed).

¶ 55    As the subject cashier's checks are the property of the bankruptcy estate, any act to either obtain possession or control over them has been stayed pursuant to the Bankruptcy Code. See 11 U.S.C. 362(a)(3) (West 2020). Further, because the Bankruptcy Code divests state courts of jurisdiction, the circuit court, like this court, was without authority to adjudicate Byline's breach of warranty claims as related to the cashier's checks. Absent subject matter jurisdiction, our only

function is to announce the fact that we lack jurisdiction and dismiss the case. *Cohen*, 303 Ill. App. 3d at 1066. We therefore vacate the circuit court's order dismissing Byline's claims against Bank of America and dismiss this appeal.

¶ 56                                  III. CONCLUSION

¶ 57    For the reasons stated, we vacate the judgment of the circuit court and dismiss this appeal for lack of subject matter jurisdiction.

¶ 58    Appeal dismissed.